ELISHA PARKS *versus* THE CITY OF BOSTON.

Where part of a lot of land under lease is taken by the mayor and aldermen of Bos-
ton for the purpose of widening a street, the lease is not thereby extinguished ; nor
is the lessee discharged from his liability to pay the reserved rent during the residue
of the term.  But the lessor and lessee are each entitled to recover compensation
for the damage so sustained by them respectively.

Where land is taken by the mayor and aldermen of Boston, for the purpose of widen-
ing a street, it is to be estimated at its value at the time of the taking, in the
assessment of the damages.

Where a jury empannelled in the Court of Common Pleas to assess the damages
sustained by the owner of such land, under *St.* 1821, *c.* 109, § 8, by which the
jurisdiction of the Court of Sessions in the county of Suffolk, in such case, is trans-
ferred to that court, have viewed the land, the jurors may exercise their own judg-
ment and knowledge of like subjects, in estimating the damages , but *it seems,* that
if a juror has knowledge of any fact bearing upon the case, he must disclose and
testify to it, in court.

Under *St.* 1820, *c.* 79, § 5, a bill of exceptions lies to the instructions and rulings of
the Court of Common Pleas upon such trial.

THIS was a complaint presented to the Court of Common
Pleas, praying that a jury might be empannelled to assess the
damages sustained by the complainant in consequence of the
taking of 313 square feet of land by the mayor and aldermen
of Boston, on July 13, 1829, for the purpose of widening
Doane street in that city.

The respondents admitted the taking of the land, but trav-
ersed the allegation in the complaint, that the complainant was
damaged in his property thereby, and tendered an issue there-
on, which was joined.

At the trial in the Court of Common Pleas, before *Ward,*
C. J., after the jury had viewed the land, the complainant
offered testimony to show the value of the land, *since it was
taken, and at the time of the trial.*   The respondents objected
to the admission of this testimony, and it was rejected.

The judge instructed the jury, that the complainant was
entitled to recover the value of the land at the time when it
was taken, with interest from that time, subject to a reasonable
deduction if he were consequentially benefited by the widen-
ing of the street, or with additional damages if he were con-
sequentially damnified by the taking of a part of his land and
thereby injuring the residue ; and that it was immaterial

whether lands had risen in value, or fallen, since the complainant's land was taken.

The judge further instructed the jury, that they, having viewed the land taken and having heard the testimony of the witnesses, and enlightened their consciences as fully as they could, must give a verdict according to their own opinion and conviction ; that if any one of them knew any fact, of his own knowledge, which bore upon the case, he ought to disclose it and testify to it in court ; that in making up their verdict, they should take counsel of their own experience and knowledge of like subjects, and should consider not only what the witnesses had testified, but what they, themselves, had seen in the view which they had taken ; and that if witnesses had sworn to matters of opinion, which the jury, in the exercise of their good sense, did not believe to be correct, they should disregard such testimony.

To these rulings and instructions the complainant excepted.

In the course of the trial, the respondents, in order to show, that the complainant was not entitled to recover the full value of the land at the time when it was taken, and that they were liable to pay one Enoch Patterson, who had preferred a complaint against them, for the loss of the use of the land taken, from the time when it was taken until January 1, 1832, proved the execution of a lease of the land taken and of other lands, which was made by the complainant to Patterson before the taking of the land, by virtue of which lease Patterson was entitled to hold such lands for the term of three years from January 1, 1829, at an annual rent of $725 ; and thereupon they contended, that, inasmuch as the complainant would be entitled to recover such rent of Patterson during the continuance of the lease, a deduction should be made by the jury on this account, from the value of the land. The judge instructed the jury, that part of the land leased having been taken by law for the use of the public, without the consent of the complainant or Patterson, the lease was thereby determined ; that the complainant could not compel Patterson to pay such rent ; that the city would not be liable to pay Patterson any damages on account of his having covenanted to pay the rent to the complainant ; and that the complainant was entitled to

*Parks*
*v.*
*Boston.*

recover against the city the full value of the land taken, as if it had not been leased.

To this ruling the respondents excepted.

The jury returned a verdict for the complainant, and assessed the damages at the sum of $ 8800.

The case was argued in writing.

*B. Rand* and *F. Dexter*, for the complainant. In the case of a covenant to do an act which is lawful at the time when the covenant is made, but its performance is subsequently rendered unlawful, the covenantor is discharged, even where it is the same corporation which makes the covenant, and prohibits its performance. *Barker* v. *Hodgson*, 3 Maule & Selw. 270 ; *Presbyterian Church* &c. v. *City of New York*, 5 Cowen, 538 ; *Coates* v. *The Mayor* &c. *of New York*, 7 Cowen, 585 ; Platt on Covenants, 588 ; *Brewster* v. *Kitchell*, 1 Salk. 198. Here, it was clearly rendered unlawful for the tenant longer to occupy the land according to his lease. He was therefore discharged from the payment of rent, and the contract was dissolved.

We further contend, that the judge erred in instructing the jury, that in the assessment of damages, they must estimate the land at its value at the time of the taking, and in ruling out all evidence of its value at other periods, from that time to the time of the trial. *Clark* v. *Pinney*, 7 Cowen, 681 ; *Greening* v. *Wilkinson*, 1 Carr. & Payne, 624 ; *Baker* v. *Wheeler*, 8 Wendell, 505.

The judge erred also in referring the jury to their own private knowledge, as proper to be taken into view in making up their verdict. *Partridge* v. *Strange*, Plowd. 83 *b ; Hacker's case*, Kelyng, 12 ; *Wright* v. *Crump*, 7 Mod. 2 ; *Anon.* 1 Salk. 405 ; 1 Stark. on Evid. 405 ; *The King* v. *Sutton*, 4 Maule & Selw. 532. The reason assigned for this instruction was, that the jury had been to view the land, and therefore that they were competent to form an opinion from what they saw and from their own knowledge of the matter. If this were sound law, a new trial could never be granted on the ground that the verdict was against the weight of the evidence, in cases where a view was had ; for it would be impossible to say how far the jury acted upon their own knowledge, and

how far, upon the testimony offered by the parties. The object of the view is not, in any case, to furnish the jury with any evidence, but to enable them to understand and to apply the evidence which may be offered at the trial. For this reason, a view has been sometimes refused by the English courts, where a plan of the premises, properly authenticated, has been taken. *Attorney General* v. *Green*, 1 Price, 130; *Goodtitle* v. *Clark*, Barnes, 458.

*J. Pickering* and *C. P. Curtis*, for the respondents. The bills of exceptions filed by the parties in this case, are taken in pursuance of *St.* 1820, *c.* 79, § 5, which provides, that either party thinking himself aggrieved by any opinion, direction or judgment of the Court of Common Pleas, in *any matter of law*, may allege exceptions to the same, and that this Court shall have cognizance thereof, and may, in certain cases, increase the damages, so that interest may be recovered to the time of rendering the final judgment. This statute empowers this Court to entertain exceptions to the opinions of the Court of Common Pleas in all cases where judgment can be rendered for *damages*. In cases where this Court may be required to enter any judgment other than for money, the proper course of proceeding must perhaps be by writ of error or *certiorari*. *Dean* v. *Dean*, 2 Pick. 25; *Gile* v. *Moore*, ibid. 386; *Miller* v. *Miller*, ibid. 570; *Olney* v. *Brown*, ibid. 572. The present action is a claim for *damages*, in which the trial, if a new trial is awarded, will be by a jury, and the judgment will be for a sum of money. It therefore comes within the provisions of the statute.

The exceptions of the respondents to the instructions of the Court of Common Pleas in regard to the lease by the complainant to Patterson, are founded on the case of *Ellis* v. *Welch*, 6 Mass. R. 246.

We maintain that the judge did not err, in instructing the jury that the land was to be estimated at its value, *at the time when it was taken*. *Gray* v. *Portland Bank*, 3 Mass. R. 364; *Kennedy* v. *Whitwell*, 4 Pick. 466; *Sargent* v. *Franklin Ins. Co.* 8 Pick. 90. If this rule be adopted in estimating the damages where property is taken *tortiously*, *a fortiori*, it ought to be applied, where the taking is *lawful*. Any other rule

<div style="float:left">Parks
<i>v.</i>
Boston.</div>

than this would be fluctuating and uncertain. If the owner of land taken for a highway, had the right to defer the prosecution of his claim, at pleasure, or even for the usual term of limitation of civil actions, such right would be destructive of many useful improvements ; for it often occurs, that the widening of a highway by taking land bordering thereon, enhances the value of all the neighbouring lands, and by consequence, that of the land taken.

<i>March 17th.</i>    SHAW C. J. delivered the opinion of the Court. This case comes before the Court upon exceptions taken by both parties, to some of the decisions of the learned judge who tried the cause in the court below, in point of law.

We shall first consider the exception taken on the part of the city.

This claim for land taken to widen and improve streets in this city, and the mode of seeking the remedy therefor, depends upon the provisions and the construction of several statutes.

By <i>St.</i> 1821, <i>c.</i> 109, § 8, being the act providing for the administration of justice in the county of Suffolk, passed cotemporaneously with the act incorporating the city, it was provided that the Court of Common Pleas, for the county of Suffolk, should have all the jurisdiction before that time vested in the Court of Sessions with regard to streets and ways.

By <i>St.</i> 1804, <i>c.</i> 73, authority is given to the selectmen of Boston, (afterwards transferred to the mayor and aldermen by the city charter,) to lay out and widen streets, to take land therefor and remove buildings ; and the owner or owners of the land and buildings, that shall be so taken or removed, shall recover recompense for the damages, which he or they may thereby sustain, to be adjusted by agreement, or as shall be ordered by the justices of the Court of General Sessions of the Peace, upon an inquiry into the same by a jury to be summoned for that purpose, to be drawn &c. The <i>St.</i> 1799, <i>c.</i> 31, § 3, which had made substantially the same provision, directed, that the damages should be ascertained, determined and recovered in the way and manner pointed out by <i>St.</i> 1786, <i>c.</i> 67, entitled " An act directing the method for laying out highways."

The act already referred to, *St.* 1821, *c.* 109, § 8, by which the authority of the Court of Sessions was transferred to the Court of Common Pleas, so far altered the old mode of proceeding before a sheriff's jury as to direct, that such trial should be had at the bar of the Court of Common Pleas, in the same manner as other civil causes are there tried, by the jurors there returned and empannelled ; and that the jury, to whom such cause might be committed, should be taken to view the place in question, if either party should require it.

It has heretofore been decided by this Court, and apparently upon much consideration, in the case of *Ellis* v. *Welch*, 6 Mass. R. 246, that the term " owner " in this statute, includes every person having an interest in real estate capable of being damnified by the laying out of a street, through or over it, and is equivalent to the description of, " any person damaged in his property," as used in the general act regulating the laying out of highways, *St.* 1786, *c.* 67, § 4.

This construction appears to us to be entirely reasonable and necessary. It is a remedial act, intended to carry into execution that most equitable provision of the constitution, " that whenever the public exigencies require that the property of any individual should be appropriated to public uses, he shall receive a reasonable compensation therefor." To give effect to this highly important and equitable provision, it is necessary to construe the term *property* as including every species of valuable vested interest. In the same case it was decided, that a tenant for years at an annual rent, was an owner, within the meaning of the statute, and that the lessee and the landlord are each entitled to compensation according to the nature and magnitude of the damages, which they may have respectively sustained.

There seems to be no other equitable or practicable mode of executing this statute. There may be a lease for years to one, with a life estate to another, and a vested remainder in a third, each of whom will sustain damage, by taking a part of the estate ; but as those interests are entirely distinct, neither of these parties could claim the damages, or equitably receive the compensation due to another. Such compensation therefore must be apportioned among them, according to the rela-

tive magnitude and value of their respective interests, and of course, there must be a separate inquiry and a separate award of damages, upon the complaint and application of each. Again, there seems to be great difficulty in discovering any principle, upon which it can be legally held, that the taking part of an estate which is under lease, for a public easement, will put an end to the lease, or deprive the lessee of his term, or exempt him from his liability to pay the reserved rent.

It may happen, that where a lease is held for a short term, at a rack rent, equal to the annual value of the estate, and especially where so large a part of the estate is taken for the public easement, as to render the tenement unfit for the uses for which it was leased, it would be more convenient for all parties to consider the lease at an end, and to permit the whole damage to be recovered by the landlord. If this should be desired, by the landlord and tenant respectively, nothing would prevent them from accomplishing it, before the way is finally laid out and recorded, by a surrender of the term by the tenant and an acceptance thereof by the landlord. But the point under consideration is, whether such determination of the term is effected by the operation of law, without such surrender.

There are many cases, in which the tenant has a highly valuable and beneficial interest in his term, as where he holds it for a long term, on a building lease, at a moderate ground rent, or at a mere nominal rent, or where a large fine has been paid upon the commencement or renewal of the lease. It may be, that notwithstanding the estate is diminished in quantity by the taking for public use, it is not diminished in value, but even increased in value to the lessee, for the purposes of business to which he may have occasion to apply it. Upon what principle can it be held, that in any of these cases, the term is *de facto* extinguished and annihilated by the taking of a part, perhaps a small and unimportant part, of the leased property, for public use ?

But I presume this supposed effect of determining the term is thought to result from the other branch of this opinion, which is, that by the act of thus taking away a part of the

*l*eased estate, the tenant would be exempted from the payment of the reserved rent, and therefore the landlord ought to receive an equivalent in his compensation from the public. If such were the effect, the inference would undoubtedly be correct.

But upon what principle can it be maintained, that a lessee under such circumstances would be exempted from the payment of the stipulated rent ? The lessee takes his term, just as every other owner of real estate takes title, subject to the right and power of the public to take it or a part of it, for public use, whenever the public necessity and convenience may require it. Such a right is no incumbrance ; such a taking is no breach of the covenant of the lessor for quiet enjoyment. The lessee then holds and enjoys exactly what was granted him, as a consideration for the reserved rent ; which is, the whole use and beneficial enjoyment of the estate leased, subject to the sovereign right of eminent domain on the part of the public. If he has suffered any loss or diminution in the actual enjoyment of this use, it is not by the act or sufferance of the landlord ; but it is by the act of the public, against whom the law has provided him an ample remedy. If he is compelled to pay the full compensation, for the estate actually diminished in value, this is an element in computing the compensation which he is to receive from the public. In this view, it becomes unimportant, in settling the principle we are now discussing, whether the taking for public use diminishes the leased premises, little or much, in quantity or in value ; all this will be taken into consideration in assessing the damages, which the lessee may sustain.

But it was contended on the part of the complainant, and authorities were cited to show, that where a covenant is to do any act, lawful at the time the covenant is made, but which becomes unlawful afterwards, the covenantor is excused from the performance. This principle is correct, but I cannot perceive that it has any application to the present case. For instance, if one should covenant with the owner of a lot of land to build a warehouse upon it, at a future time, and before the time a street should be laid over it, so that it would become unlawful to build upon it, the covenant would be repeal-

ed ; and it would probably follow, that the corresponding covenant on the other side to pay for such building would he considered repealed also. But nothing renders it unlawful for the tenant in the present case, to use, occupy and enjoy the leased premises, subject only to the public easement. To the extent of the property not taken he has still the beneficial use ; if its value is diminished by the taking, to that extent he has his compensation from the public, and thus he has still an equivalent for his rent paid.

Upon these grounds, we are of opinion, that the lease from the complainant to Patterson was not dissolved by the act or taking part of the leased premises to widen a public street ; that Patterson, notwithstanding such taking, continued liable to pay the reserved rent, during the term which remained unexpired ; and that the jury should have been instructed to take that fact into consideration, in estimating the damages which the complainant had sustained, by such taking.

An exception was taken on the part of the complainant, tnat the rule of damages was not correctly stated to the jury, in directing them to take the value of the land at the time of the taking, with interest thereon, as the measure of damages, adding to, or deducting therefrom, any consequential damages or benefit ; and the complainant contends, that he ought to have the advantage of any rise in the value of the land, between the time of the taking and the time of the trial.

The counsel for the complainant have argued this question, as if it were a question of damage, in a common law action, in trover or assumpsit on a breach of contract to deliver stock or other property. That question has been much discussed, and there are contrary opinions. In this commonwealth it seems to be definitively settled. The case of *Kennedy* v *Whitwell*, 4 Pick. 466, was a very strong one for the application of the rule contended for. It was upon a promise to deliver goods, at a certain time, which had been paid for ; so that the defendant had the consideration, and withheld the goods, thereby bringing the case within the operation of the principle upon which the cases in England and New York, have been decided ; and it further appeared, that the goods had been sold at a great advance between the time of the

breach and the time of the trial.   But the Court held, that <span>Parks<br>*v.*<br>Boston.</span> the value of the goods, at the time when they should have been delivered, with interest thereon, was the proper measure of damages.   The authority of this case was confirmed in a more recent case.   *Sargent v. Franklin Ins. Co.* 8 Pick. 90.   That such has been the rule in trover, in confirmation of the reports published, I have a note of a manuscript case, (*H. G. Otis v. Gibbs,*) in which the rule was so laid down at *Nisi Prius* by the late Chief Justice *Parsons*, who in addition to the remarkable extent and accuracy of his knowledge, from books, was particularly conversant with the rules of practice and the traditional principles of law which had been adopted in courts and transmitted from early times, in practice, previously to the publication of reports.

I am aware, that the foundation of the other rule is, that the defendant, by converting the plaintiff's goods, or refusing to deliver goods or stock, upon an executed consideration, that is, where they have been paid for, is a wrongdoer, and, whilst keeping the compensation, has no right to say that the plaintiff, if he had had his stock, would not have kept it for the highest price to which it has at any time risen, since the refusal ; and that he has no right to say that the plaintiff could have bought an equal quantity at the market price of the day, when the defendant, without right, withholds the means of doing it, by retaining the plaintiff's money.   There is certainly some plausibility in this ; but the last consideration is rather specious than practically sound ; because, the damage for the detention of money is settled, and interest is in legal contemplation an adequate indemnity.

But the other rule has found favor, not because it will, in all cases, do justice ; for no general rule will do this ; but because it is more equal, it is certain and simple and practical, and will do justice in the greatest number of cases.   The rule contended for is not equal, because, if the goods or stock have fallen, between the time of the non-delivery and the time of the trial, the defendant is not to have the benefit of it.   This, no doubt, results from the consideration, that the defendant is a wrongdoer, and it is just to throw the risk upon him.   But it is manifest, that this would throw a strong

Parks
v.
Boston.

temptation in the way of a plaintiff to delay bringing his action, as long as the rule of limitations will admit, in order to avail himself of the probable fluctuations in the market. To guard against this, some judges have laid down the rule with this modification, viz. that the action is brought without delay, (*Clark* v. *Pinney*, 7 Cowen, 696,) or confined plaintiffs to one of two periods, as the day of the breach, or the day of trial.

But the advantage of the other rule is, that it is certain and practical, and tends to prevent litigation, being a rule which parties may apply for themselves, and which, in most cases, will be the nearest approximation to doing particular justice. These are advantages, which those conversant with legal proceedings, know how to appreciate. But without pursuing this discussion further, and leaving the rule as this case found it so far as it is applicable to common law actions either on contract or tort, we are clearly of opinion, that the rule contended for, on the principles of the cases cited, could not be applied to a case like the present. The defendants are not wrongdoers. They are withholding nothing from the plaintiff; not the estate taken, for that the public have acquired ; not the compensation, for the city could not pay or tender that, till liquidated by the course of proceeding which is now going on. It is not strictly speaking an action for damages ; but rather a valuation or appraisement of an incumbrance created on the plaintiff's estate, for the use of the public. It is the purchase of a public easement, the consideration for which is settled by such appraisement only because the parties are unable to agree upon it. The true rule would be, as in the case of other purchases, that the price is due and ought to be paid, at the moment the purchase is made, when credit is not specially agreed on. And if a pie-powder court could be called on the instant and on the spot, the true rule of justice for the public would be, to pay the compensation with one hand, whilst they apply the axe with the other ; and this rule is departed from only because some time is necessary, by the forms of law, to conduct the inquiry ; and this delay must be compensated by interest. But in other respects the damages must be appraised upon the same rule,

as they would have been on the day of the taking.  Besides, the alienation of the plaintiff's property, so far as it was alienated at all, for the public easement, was definitive, complete, and perpetual, on the day of taking ; and what difference can it make to the plaintiff, that his particular estate would have been worth more or less, if he could have kept it to an after period ?  Besides, it would be extremely difficult to determine, where a great public improvement has been made in a street, how far the enhancement of the value of the estate has been occasioned by a change in the market value from general causes and how far by the improvement itself.  On the whole, independently of the authorities applicable to the case of an action for damages for the unlawful detention of property, the jury were correctly instructed, that in the estimate of damages done to an estate partly taken for the public use, the value of the estate on the day of the taking, was the true value to be taken by the jury, in their appraisement of the damages.

Another exception taken by the complainant, was, that the learned judge instructed the jury, that as the evidence of value was matter of opinion, the jury, having taken a view, might exercise their own judgment, though if they knew of any fact, they must disclose it and testify to it in open court.

It appears to me, that the direction of the court in this respect was singularly well guarded, and expressed with great accuracy and strictly conformably to law.

The cases cited tend to show, that where a juror knows of a fact material to the issue, he must disclose and testify to it, in court ; but in the case before us, the jurors were referred to their own experience and knowledge of like subjects, especially that acquired by the view, to test the accuracy of the witnesses in matter of opinion.  Were this a common law action therefore, I should feel strongly inclined to the opinion, that this instruction was strictly and legally correct ; but what we think puts it beyond any exception here is, that this was not an action, but an estimate of damages, in laying out a highway.  The act for widening streets in this city, referred to the general act, *St.* 1786, *c.* 67, for the mode of assessing damages.  By that act, § 4, it was provided, that any person

18 *

Parks
v.
Boston.

damaged in his property should recover of the town reasona
ble satisfaction, according to the estimation of a committee ,
and that if any person were aggrieved by the doings of the
committee, in estimating damages, he might apply to the
Court of Sessions, who were empowered to hear and finally
determine the same by a jury.

It is well known, that the course of proceeding both before
the locating committee and before the jury, was to go upon
the land, and there make the appraisement or estimate ; if by
a jury, before the sheriff, the verdict being returned into court
under seal.

By the *St.* 1821, *c.* 109, being the act accompanying the
city charter, the jurisdiction of the Court of Sessions, in
regard to streets and ways, was transferred to the Court of
Common Pleas, and by § 8, such trial is to be had at the bar
of the court, in the same manner as other civil actions are
tried, by the jurors there returned and empannelled ; and the
jury shall be taken to view the place in question, if either
party shall request it.

The locating committee, and the sheriff's jury are to make
an estimation upon view, and speaking for myself, I cannot
perceive why they might not, in both cases, have estimated
the damages, upon their own experience and judgment, with-
out any evidence *aliunde*, though they might be at liberty to
enlighten their own judgments by the aid of testimony.

And there seems to be no substantial difference established
by the mode of trial in this city.  The whole city being within
an easy walk of the court, it was manifestly a wise and con-
venient provision, that after having taken a view of the place,
they should return into court, and have the cause conducted
there before the judge, and in conformity to the usual forms,
rather than elsewhere before the sheriff.

But the object of inquiry is still the same ; it is to estimate
the complainant's damages, and that upon view, if either party
desire it.   The jury must therefore, I think, exercise their
own knowledge and experience, fully ; and 'perhaps, in most
instances, with a competent and intelligent jury, such judg-
ment could not be much aided by the estimates of others,
though under oath and in the form of testimony.   It may

follow as a consequence, as suggested by the learned counsel for the complainant, that it would be difficult, if not impossible, to set aside a verdict, in such a case, on the ground of being contrary to the weight of evidence given on the trial ; though probably the same result might be obtained by proving, by other evidence, such an excessive over or under valuation, as to show that the jury must have been misled by error or prejudice.

The Court entertained some doubt whether exceptions could be sustained in this case under the provisions of *St.* 1820, *c.* 79, § 5, and whether the present application should not have been by *certiorari.* The course of proceeding by exceptions is more convenient and beneficial than that by *certiorari*, where the proceedings, if erroneous, must be wholly quashed, and the parties left to begin *de novo.* But the statute allowing exceptions to be filed was primarily intended as a short mode of bringing an appeal or a writ of error, and as such principally applicable to common law actions.

But the words of the statute are comprehensive enough to embrace it, and since the jurisdiction of this subject in this city has been transferred to the Court of Common Pleas, by the statute cited, and as it is thereby directed that it shall be tried at the bar of the court, in the same manner as other civil causes are there tried, this being subsequent to the statute allowing exceptions to be filed, and the proceeding being thus substantially an action for damages, we think it comes within the operation of the statute of 1820, and that the exceptions may be sustained.

The result is, that the exceptions taken by the city are sustained, that the verdict in the writ below is set aside, and that the cause is to be tried at the bar of this Court.