NOVEMBER TERM, 1907. 49

Ft. Wayne, etc., Traction Co. *v.* Ft. Wayne, etc., R. Co.—170 Ind. 49.

## Ft. Wayne & Southwestern Traction Company *v.* Ft. Wayne & Wabash Railway Company et al.

[No. 20,860. Filed January 31, 1908.]

1. Eminent Domain.—*Interurban Railroads.—Appropriation.—When Complete.—Evidence.*—The filing, by a street railroad company, with the proper clerk, of an instrument of appropriation of certain described lands to be used for the construction and operation of an interurban railroad constitutes a grant thereof by the State, subject only to the payment of compensation therefor, which compensation must be estimated as of the date of such filing. pp. 52, 58.

2. Same.—*Exercise of Power of.—Consent.*—The consent of the owner of land sought to be appropriated is wholly immaterial in the exercise of the right of eminent domain. p. 54.

3. Same.—*Priorities.—Interurban Railroads.*—That interurban railroad company has priority to a certain strip of land for a right of way, which first files its instrument of appropriation. p. 58.

4. Damages.—*When Right of, Accrues.—Eminent Domain.—Interurban Railroads.*—Upon the filing, by an interurban railroad company, of an instrument of appropriation of land for a right of way, an action in damages accrues to the owner which will not pass to a subsequent grantee except by express stipulation. p. 59.

5. Same.—*Eminent Domain.—Appropriation of Lands.—Subsequent Conveyance.*—The conveyance of lands on April 1, which had been included in an instrument of appropriation properly filed on March 29, by an interurban railroad company gives the grantee no right of action for the damages for such appropriation. Gillett, J., dissenting. p. 61.

6. Eminent Domain.—*Award.—Exceptions.—Striking Out.—Amendment.*—Where lands were appropriated for an interurban railroad right of way and the lands subsequently conveyed, exceptions filed to the award by the grantee should not be stricken out, since, by amendment such grantee might show an assignment to it of the right of action growing out of such appropriation. p. 61.

7. Pleading.—*Answer.—Eminent Domain.—Award.—Exceptions.*—Exceptions to an award in eminent domain, showing that the exceptor purchased the lands sought to be appropriated after the filing of the instrument of appropriation, are bad, where they fail to show that the right of action for such appropriation was also assigned. p. 63.

From Kosciusko Circuit Court; *Lemuel W. Royse,* Judge.

Condemnation proceedings by the Ft. Wayne & Southwestern Traction Company, against the Ft. Wayne & Wabash Railway Company and others. From a judgment for defendant company, plaintiff appeals. *Reversed.*

*Olds & Doughman* and *Charles M. Niezer,* for appellant.
*Stuart, Hammond & Simms, J. Fred. France, Robert J. Loveland* and *John D. Widaman,* for appellees.

HADLEY, J.—Appellant, a corporation organized under the street railways act, on March 29, 1901, filed its instrument of appropriation with the clerk of the Huntington Circuit Court for the appropriation of certain real estate belonging to Aaron Dukes, the same being that part of the towpath of the Wabash & Erie Canal lying between the town of Roanoke and the city of Huntington, in Huntington county. Dukes, at the time resided in the city of Peru, and, not being a resident of Huntington county, notice of the filing of said instrument of appropriation was given by publication, the first of which appeared April 2, 1901. On April 1, 1901, Dukes and wife conveyed to appellee Ft. Wayne & Wabash Railway Company, by quitclaim deed, for the expressed consideration of $1, the canal property, embracing the portion described in appellant's appropriation proceeding. The deed contains this provision: "This deed is made for the express provision of aiding said grantee in constructing, maintaining and operating a railroad over, upon and along the line of said canal, and for no other purpose whatever." Upon the maturity of the publication appellant presented to the judge of the Huntington Circuit Court its petition for the appointment of appraisers to assess the damage. Dukes appeared and filed his statement and objections to the appointment of appraisers, reciting therein that prior to April 1, 1901, he was the owner in fee of the lands described in appellant's instrument of appropriation, but on that day he and his wife conveyed the same

NOVEMBER TERM, 1907.      51

Ft. Wayne, etc., Traction Co. *v.* Ft. Wayne, etc., R. Co.—170 Ind. 49.

to the Ft. Wayne & Wabash Railway Company, since which time they had had no personal interest in the controversy, that said company is the owner of said real estate, and is a necessary party to this proceeding, and praying that it may be made such party. The objections were overruled, and, it appearing that the petitioner was unable to agree with the owner, appraisers were appointed to assess the damage, who returned and filed their assessment in the sum of $6,500, which sum was paid into the clerk's office for the use of the party authorized to receive it. Within ten days of the filing of the appraisers' report, upon its publication appellee railway company was made a party to the proceeding and filed exceptions to the report, challenging the regularity of the proceedings, and the adequacy of the damages awarded. Dukes filed no exceptions to the report of the appraisers, and so far as appears made no assignment of his claim for damages, by deed or otherwise.

Subsequent to the admission of appellee railway company as a party there was a change of venue to the Kosciusko Circuit Court, wherein appellee filed exceptions to the appraisers' report, and, after numerous counter pleadings and rulings, the case went to the jury on the single question of damages, with an instruction given at the request of appellee railway company, to the effect that: It appears from the deed offered in evidence that soon after the plaintiff filed the instrument of appropriation, and before the appointment of appraisers, Aaron Dukes and wife conveyed to the defendant the Ft. Wayne & Wabash Railway Company the lands described in the plaintiff's instrument of appropriation. "The jury will, therefore, take it as a fact in the case that said defendant is the owner of the real estate proposed to be appropriated, and is entitled to all the damages pertaining to the appropriation." A verdict was returned assessing the damages at $13,791, upon which judgment was rendered in favor of appellee.

The important and real questions in the case arise from

52     SUPREME COURT OF INDIANA,

Ft. Wayne, etc., Traction Co. *v.* Ft. Wayne, etc., R. Co.—170 Ind. 49.

the following controversy: Appellant contends that in the condemnation proceedings by an authorized corpora-

1.  tion the right of appropriation becomes fixed in the corporation, *eo instanti,* on the filing of the instrument of appropriation, and that all damage resulting to the owner from the taking must have reference to the act of the filing as the appropriating act, and to the time of filing as the time to which all assessable damages must relate; while, on the other hand, the appellee maintains that while damages are assessable with reference to the time the appraisal is made, title does not pass to the corporation until the damages have been assessed, and paid or tendered.

If appellant's contention is right, then Dukes, being the owner in fee when the instrument of appropriation was filed, was the only sufferer from the taking, and because thereof became simultaneously vested with a claim against the corporation for full compensation for all damages that should result to his land by reason of the taking and the construction of the railroad; and such claim, being for a money demand for a taking and injury to the property, was not an incident of the remaining estate, and being purely personal and unassigned, by deed or otherwise, did not pass with the land to appellee railway company by the conveyance of April 1, and the railroad company had, therefore, no interest in the claim for damages, and its exceptions to the report of the appraisers should have been stricken out and the appeal dismissed.

If appellee's contention can be sustained, then the filing of the instrument of appropriation by appellant on March 29 did not amount to a taking of the property, and the appropriation did not become effective until after the conveyance of April 1, which would make all assessable damages for the seizure the property of the grantee.

We proceed to consider the merits of the controversy. The State reserves dominion over all the lands within its borders and the right to seize any part of it at any time it

becomes necessary to the public welfare. This reserved power has been defined as the "right of the state to resume possession of private property for public use." *Beekman* v. *Saratoga, etc., R. Co.* (1831), 3 Paige 45. It would subvert a salutary principle of government if it were made possible for an individual landowner to defeat a great public good for his own selfish or perverse ends. Eminent domain is a power that necessarily resides in sovereignty to be ever present and available in controlling and regulating those rights that pertain to the general public, as against the individual citizen. Being a power or right that belongs exclusively to the State, it follows that it can be exercised only by those agencies that have been duly empowered by the State through legislative enactment. Therefore, when lodged in a railroad or other corporation, it is in every proper sense a grant from the State that may be employed against private property irrespective of the owner. 2 Lewis, Eminent Domain (2d ed.), §306, p. 755; *Sioux City, etc., R. Co.* v. *Chicago, etc., R. Co.* (1886), 27 Fed. 770. There is nothing in the spirit or letter of the statute conferring eminent domain upon railroad corporations that imposes any restriction or condition upon its exercise, beyond regularity of proceeding and the rendering of compensation to the owner, as required by the Constitution.

The act of 1903 (Acts 1903, p. 92, §3, §5679 Burns 1908), which confers upon street railway companies the right of eminent domain, provides: "Such company is hereby authorized to enter upon any land for the purpose of examining and surveying a railroad line, and may appropriate so much thereof as may be deemed necessary for its railroad. * * * The corporation shall forthwith deposit with the clerk of the circuit court, or other court of record of the county where the land lies, a description of the rights and interests intended to be appropriated; and such lands, rights and interests shall belong to such company, to use for the purpose specified by making or tendering payment as

hereinafter provided.'' The statute further provides that if the corporation shall not agree with the owner of the land touching the damages sustained by such appropriation, if such owner is a nonresident of the county, the corporation shall give notice thereof, and, ''on the application of either party,'' the court shall appoint three appraisers to fix the damages. The section further provides for the assessment of damages, requiring the appraisers to set forth in their report the ''value of the property taken or injury done to the property, which they assess to the owner.''

It will be noted that by this statute, which provides the formal procedure required of a railroad company in a condemnation proceeding, the corporation may enter upon the land and make surveys and satisfy itself as to the most available line for its railroad, without the consent of, or even notice to, the owner; and may appropriate so much thereof as it deems necessary for the construction and repair of the railroad. The owner's consent to the appropriation is wholly unimportant, and his right to direct, or in any way control the particular location, is no greater than that of a stranger. No one can question the right of a qualified corporation to take the property; and, if the proceedings are orderly, no defense to the taking can be interposed.

So the statute very appropriately directs that as soon as the company has reached a decision, as to the line it will take, it shall ''forthwith deposit with the clerk a description of the 'rights and interests' intended to be appropriated,'' and upon such filing ''such lands and interests shall belong to such company, to be used for the purpose specified, by making or tendering damages as hereafter provided.'' If it were not for the necessity of a procedure to secure a fair assessment of the damage the proceeding might end with the filing of the instrument of appropriation. Under the statute, the filing of such instrument, specifically describing the property seized and declaring

Ft. Wayne, etc., Traction Co. *v*. Ft. Wayne, etc., R. Co.—170 Ind. 49.

the intention of appropriating it, is the formal assertion of the absolute right to appropriate. Nothing remains to be done but to compensate the owner. *Indiana Power Co.* v. *St. Joseph, etc., Power Co.* (1902), 159 Ind. 42; *Williamsport, etc., R. Co.* v. *Philadelphia, etc., R. Co.* (1891), 141 Pa. St. 407, 414, 21 Atl. 645, 12 L. R. A. 220; *Dowie* v. *Chicago, etc., R. Co.* (1905), 214 Ill. 49, 73 N. E. 354; *Old Colony R. Co.* v. *Miller* (1878), 125 Mass. 1, 6, 28 Am. Rep. 194; *Morris, etc., R. Co.* v. *Blair* (1854), 9 N. J. Eq. 635, 645; *Rochester, etc., R. Co.* v. *New York, etc., R. Co.* (1888), 110 N. Y. 128, 133, 17 N. E. 680; *Parks* v. *City of Boston* (1834), 32 Mass. 198, 209; *Dupuis* v. *Chicago, etc., R. Co.* (1885), 115 Ill. 97; 2 Lewis, Eminent Domain (2d ed.), §306, p. 754, also §477; Mills, Eminent Domain (2d ed.), §94; Baldwin, Am. R. Law, 89. 2 Lewis, Eminent Domain (2d ed.), §477, and 2 Elliott, Railroads (2d ed.), §985, assign *Logansport, etc., R. Co.* v. *Buchanan* (1875), 52 Ind. 163, and *LaFayette, etc., R. Co.* v. *Murdock* (1879), 68 Ind. 137, to the same class.

In *Old Colony R. Co.* v. *Miller, supra,* the particular time when the damages accrued was in issue between the railroad corporation and the landowner, and the court said: ''The right of the landowner for damages for land taken by a railroad corporation is complete when the location is made [instrument of appropriation is filed]. That act constitutes the taking. It is the loss occasioned by the exercise of the right of eminent domain, at that time, for which the statutes provide indemnity.''

In *Dowie* v. *Chicago, etc., R. Co., supra,* the question was whether the company's condemnation was effectual when a part of the land became incorporated as a city, as to which the court said: ''The rule seems to be clear that the rights and interests of the parties date from the time of the filing of the condemnation petition.''

In *Parks* v. *City of Boston, supra,* the court, in discussing the particular time to which the values and damages should relate, said: ''Besides the alienation of the plaintiff's prop-

erty, so far as it was alienated at all, for the public ease-
ment, was definitive, complete or perpetual on the day of
taking.''

The case of *Williamsport, etc., R. Co.* v. *Philadelphia, etc.,
R. Co., supra,* between two railroads, and in considering the
priority the court said: ''The act of location is at the same
time the act of appropriation. The space covered by the
line as located is thereby seized and appropriated to the pur-
poses of the construction and operation of the railroad by
virtue of the power of eminent domain, and nothing remains
to be done except to compensate the owner. After the act
of location by the company, the owner or the company may
proceed at once to secure an ascertainment of the damages.
Until such act neither can do so; for no right to damage
vests or accrues to the owner until there has been an appro-
priation of his property by the corporation.''

To recall the language of the statute: ''And such lands,
rights and interests shall [upon the filing of the instrument
of appropriation] belong to such company, to use for the
purpose specified by making or tendering payment as here-
inafter provided.'' §5679 Burns 1908, Acts 1903, p. 92, §3.
This language manifestly means that the right to take the
land becomes fixed by the filing of the instrument of appro-
priation, but does not become complete, nor carry the right
of possession or enjoyment, until the damage has been ascer-
tained and paid or tendered; and upon payment or tender
of the damage the right to take, for the use specified, be-
comes perfect as of the date of filing the instrument of ap-
propriation, except in cases appealed to the circuit court.
Upon payment of the damage awarded by the appraisers to
the clerk of the court for the use of the landowner, the com-
pany acquires the right to take immediate possession pend-
ing the appeal, subject, however, to having the right of
possession defeated by its failure to make prompt payment
of any additional damage awarded by the jury. *Heinl* v.
*City of Terre Haute* (1903), 161 Ind. 44,

The fact that the filing of the instrument of appropriation strips the landowner of all right or power to defend against or defeat the taking, if regularly and diligently prosecuted, either in his own right, or by a subsequent conveyance to another for a like or kindred purpose, seems to present an incontrovertible test of the correctness of our conclusion.

Some apparent confusion has crept into our cases, as to the time and acts that shall operate to vest, or pass the title to the condemning party; and also as to what particular time or event the assessment of damage shall relate to. There should be no stumbling over the common expressions concerning the ''vesting of the title'' or the ''passing of the title.'' Nothing more than an easement is acquired by a condemnor, and such expressions should be regarded as implying only the vesting, or passing of the legal right of possession for the particular purpose specified, and in this sense there is no real conflict in any of our cases.

Neither should there be any doubt or uncertainty as to what event or date the assessment of damage should refer to. The statute we rely on was passed in 1901, in harmony with a long line of decisions from this court, holding, in effect, that, in cases where eminent domain is asserted, all damage flowing from the construction and proper operation of a railroad, both present and prospective, is ascertainable and assessable as of the time or date of the seizure or taking of the property. What constitutes the particular event, or act of seizure, or taking, to which relation must be had, has never been before this court for decision. We have found it to be the filing of the instrument of appropriation. Therefore, if the property becomes lost to the owner, upon the filing of the instrument of appropriation, that act must necessarily amount to a severance of the easement from his title, to a depletion of the enjoyment of his property, the value of which he or the condemning party may proceed to ascertain by appraisement. Nothing remains to complete the appropriation but the ascertainment and payment of the damages. It is

58 SUPREME COURT OF INDIANA,

Ft. Wayne, etc., Traction Co. v. Ft. Wayne, etc., R. Co.—170 Ind. 49.

held by all the adjudications that have come to our notice that the landowner has no defense to a legal exercise of eminent domain against his property beyond the right to demand that his damages be paid. Upon the same principle the first corporation that locates its railroad and gives notice of its intention, or files its instruments of appropriation, has priority of right. It has also been held that the filing of the appropriating instrument is such a taking as will be good against an unrecorded deed. *Barre R. Co.* v. *Montpelier, etc., R. Co.* (1888), 61 Vt. 1, 17 Atl. 923, 4 L. R. A. 785. On the general subject see 2 Lewis, Eminent Domain (2d ed.), §306, p. 755, and authorities collated; *Morris, etc., R. Co.* v. *Blair* (1854), 9 N. J. Eq. 635, 646; *Sioux City, etc., R. Co.* v. *Chicago, etc., R. Co.* (1886), 27 Fed. 770.

In the assessment of damages in such cases it is important that there shall be some definite, fixed and certain period from which all estimates and reckoning may be made in the appraisal.

In *Logansport, etc., R. Co.* v. *Buchanan, supra,* the trial court permitted several witnesses to testify as to the value, at the time of the trial, of the land taken for a railroad, and this court said: "The instrument of appropriation was filed July 25, 1871, and the trial took place in May, 1873. Counsel for the defense do not attempt to sustain this ruling, and it seems to us that it cannot be sustained."

In *LaFayette, etc., R. Co.* v. *Murdock, supra,* this court held the following charge to the jury to be a correct statement of the law: " 'Your inquiries as to the amount of damages sustained by the plaintiffs, if any, should relate to the time of the filing of the act of appropriation.' "

In *Harshbarger* v. *Midland R. Co.* (1892), 131 Ind. 177, the railroad company, in 1873, without right, entered upon the land of Meyers, and with his knowledge, but without his consent, constructed a grade for its railroad. In 1875 Meyers died and his lands descended to the plaintiff. In

NOVEMBER TERM, 1907.    59

Ft. Wayne, etc., Traction Co. *v.* Ft. Wayne, etc., R. Co.—170 Ind. 49.

1887 the railroad company reëntered the premises, restored the grade it had made in 1873, laid down its track, and entered upon the operation of its railroad.   Upon these facts it was held that the damage resulting from the construction of the railroad accrued to the owner of the land at the time of the entry and making of the first grade, and that the cause of action, for all present and prospective damages, accrued to such owner, and did not descend with the land to his heir.   See, also, *New Jersey, etc., R. Co.* v. *Tutt* (1907), 168 Ind. 205; *Indianapolis, etc., Traction Co.* v. *Larrabee* (1907), 168 Ind. 237, 10 L. R. A. (N. S.) 1003.

Equally supportive of our position is another line of cases which hold that a seizure of land under eminent domain, at the instant of the seizure, gives the owner a personal claim for damages, in the nature of a chose in action, that will not pass to a subsequent grantee of the land under his deed, without an express stipulation or assignment of the claim.

In *Indiana, etc., R. Co.* v. *Allen* (1885), 100 Ind. 409, in speaking of the right of a subsequent grantee to recover damages for the occupancy of a railroad, this court said: "When the strip of land was taken the quarter section belonged to Martha Brittingham; the right to recover all the damages then belonged to her; that right was a chose in action; it did not pass to appellee by the warranty deed from Mrs. Brittingham and her husband.   No assignment is alleged, and the rule is that damages to land, remaining uncollected does not pass to a vendee."   It is said in Pierce, Railroads, 185: "The right to compensation accrues and takes effect at the time of the taking, though it may be ascertained and declared afterwards.   It belongs, therefore, to the person who is the owner at the time of the taking, and does not, without an express stipulation, pass to a purchaser by a subsequent conveyance, although containing covenants of warranty."   See, also, *Evansville, etc., R. Co.* v. *Nye* (1888), 113 Ind. 223, 232; *Sherlock* v. *Louisville, etc., R. Co.* (1888),

115 Ind. 22, 31; *Indianapolis, etc., R. Co.* v. *Price* (1899),
153 Ind. 31, 32; *Sioux City, etc., R. Co.* v. *Chicago, etc., R.
Co., supra; Rochester, etc., R. Co.* v. *New York, etc., R. Co.,
supra;* 2 Lewis, Eminent Domain (2d ed.), §306, p. 755; 15
Cyc. Law and Proc., 795, and notes.

The legislature itself adds strength to our conclusion by
designating or characterizing the filing of the instrument of
appropriation as the ''act of appropriation.'' The language
employed follows: ''Upon filing such act of appropriation
[referring to the instrument of appropriation described in
the preceding sentence]   *   *   *   or making such publica-
tion,'' upon the application of either party the court shall
appoint appraisers to assess the damage.    §5679 Burns 1908,
Acts 1903, p. 92, §3.    The notice here referred to is for the
benefit of the landowner, and a fair construction of the pro-
vision is that the condemnor cannot proceed with his appli-
cation for the appointment of appraisers until the land-
owner has been duly notified, but the latter may waive notice
and apply for the appointment of appraisers at any time
after the ''act of appropriation'' referred to.    If, then, the
landowner has the right to ask for the appraisal of his dam-
ages immediately after the ''the act of appropriation'' is
filed, may we inquire by what right he may claim damages,
if he has, at the time, parted with nothing?    As observed
by the supreme court of Pennsylvania in effect:    Until
there has been an actual appropriation, neither the corpora-
tion nor the landowner can apply for the assessment of dam-
ages, because no damage vests or accrues until there has been
an appropriation of his property.

We cannot agree with the appellee's counsel, that since the
conveyance by Dukes to the Ft. Wayne & Wabash Railway
Company was made on the day before the first publication
of notice, though after filing the instrument of appropria-
tion, the land was then unaffected by the condemnation pro-
ceeding.    As we view the matter, the notice required relates
wholly to the ascertainment of damages.    Preliminary steps

for the appointment of appraisers necessarily imply that the appropriation has already been accomplished, and the landowner damnified.

We conclude that the instrument of appropriation filed by appellant with the clerk on March 29, 1901, was a seizure and an appropriation of the land therein described, and that all damage resulting from the taking and the construction of the railroad at once accrued and vested in the owners, Aaron Dukes and wife, as a money demand in their favor against appellant, and which claim did not pass to the Ft. Wayne & Wabash Railway Company by the deed of Dukes and wife of April 1, 1901.

The record discloses that upon the maturity of the notice of the filing by appellant of its petition for the appointment of appraisers, to wit, on April 27, 1901, Dukes and wife appeared and filed what was termed objections to the appointment of appraisers and petition to make appellee railway company, the alleged purchaser of the real estate involved, a party to the proceeding. Upon motion of appellant the objections and petition were denied, and the appraisers were appointed as prayed by appellant. On May 2, the appraisement was filed. May 11 the appellee company, upon the objections and petition filed by Dukes and wife on April 27, requested the court to permit it to become a party to the proceeding. Over the objection of appellant the motion was sustained, and appellee company thereupon filed exceptions to the proceeding that do not appear in the record. On May 13, 1901, appellant, under the direction of the court, paid to the clerk of the court the full amount of the appraisement for the use of the party authorized to receive it. More than two years afterward, to wit, October 2, 1903, appellee company filed what is termed its "amended exceptions," averring, among other things, that since April 1, 1901, its purpose had been to construct a railroad from Ft. Wayne to Wabash, along the line of the Wabash & Erie Canal, and that ever since April 1, 1901, it had been the

owner in fee simple, by conveyance from Aaron Dukes and wife, of the real estate sought to be appropriated by appellant by virtue of the proceeding in this action, and sets forth thirty specifications of fact, as in denial of the right of appellant to make the appropriation, and as to the inadequacy of the damage assessed by the appraisers. By the specifications it is shown that the appellant's instrument of appropriation was filed on March 29, 1901, and that the conveyance of Dukes and wife, under which it claims the right to file exceptions, was executed on April 1, 1901. There is no averment that Dukes and wife in any way assigned or transferred to appellee railway company their claim for damages from said appropriation.

Upon the day of the filing of said last-named exceptions, appellant moved to strike them out, because it affirmatively appeared therefrom that the Ft. Wayne & Wabash Railway Company had no interest whatever in the damages accruing by reason of appellant's appropriation proceeding; that it affirmatively appeared that at the time of the filing of the instrument of appropriation and the accruing of damages in controversy, the appellee company had no interest whatever in said real estate, or the damage occasioned by the appropriation thereof.

The exceptions, or answer, so far as appears from the record, affirmatively show that appellee company had no interest whatever in the subject-matter of the controversy, and such answer was, therefore, wholly foreign and irrelevant. The writer, speaking for a minority of the court, is of opinion, that as the motion was addressed to the exceptions, or answer, as a whole for irrelevancy, and which answer could not in any event be made material and relevant by substituting at that late date an entirely new and different claim of right, and, under the guise of amendment, introduce and construct a defense or claim upon a wholly different foundation, there is merit in the motion to strike out, and reversible error should be predicated upon the decision of the court in

NOVEMBER TERM, 1907. · 63

Ft. Wayne, etc., Traction Co. *v.* Ft. Wayne, etc., R. Co.—170 Ind. 49.

overruling the motion, but, a bare majority of the court being of opinion that such a ruling was harmless, the question is left undiscussed.

Subsequent to the overruling of its motion to strike out, appellant filed its demurrer to each and all the exceptions filed by appellee company, on the ground that neither

7. or all stated facts sufficient to constitute a valid exception or ground of defense to the appropriation, or a valid defense to the assessment of Duke's damages. The demurrer was overruled as to twelve of the specified grounds of objection, to which ruling appellant reserved an exception.

The exceptions held good allege in terms that the instrument of appropriation was filed on March 29, when the land appropriated belonged to Dukes, and that the same was conveyed by the latter and wife to appellee company, three days afterward, to wit, April 1. There is no averment that any new or additional damage had accrued to the land on or after April 1, and no averment that there had been an assignment or transfer to appellee company by Dukes of his claim for damage, and no facts alleged showing, or tending to show, that there had been an equitable assignment of such claim to appellee company. In short, there is not a specification nor sentence in the exceptions or answer that responds to, or that in any material way tends to answer, the petition of appellant for the appointment of appraisers to assess the damages accruing to Dukes. Every vestige of claim asserted by appellee company is based on the rights acquired by the deed of conveyance from Dukes and wife, under date of April 1, and, as we have heretofore seen, this conveyance conferred no right to the personal claim acquired by Dukes on March 29, by the filing of the instrument of appropriation.

The demurrer should therefore have been sustained to each and all of the specified grounds of exception, and the judgment is therefore reversed, with instructions to sustain

64        SUPREME COURT OF INDIANA,

Ft. Wayne, etc., Traction Co. *v.* Ft. Wayne, etc., R. Co.—170 Ind. 49.

appellant's demurrer to appellee company's specification of exceptions numbered 4, 5, 7, 8, 9, 17, 18, 22, 27, 28, 29, 30, and for further proceedings in accordance with this opinion.

Monks, C. J., concurs in the result.

## SEPARATE OPINION.

GILLETT, J.—Conceding that damages are to be assessed as of the date of the filing of the instrument of appropriation, I am nevertheless of opinion that up to the time, at least, that the condemnor paid in the money the damages were capable of conveyance as real estate. Under a Constitution like that of Indiana, the assessing and tendering of compensation is a condition precedent to the taking, and the proposition cannot be escaped, that if the statute is construed as sanctioning the divestiture of title prior to that time, leaving in the original owner but a chattel interest, the act itself is in contravention of the fundamental law. Cases involving questions of priority of location as between rival companies, or as to the ownership of the damages where there has been a physical appropriation in advance of proceedings to condemn, are in nowise in point.

As the majority opinion, however, settles the question of the insufficiency of the exceptions of appellee company, based on its ownership of the damages by virtue of the deed, I accommodate myself to said conclusion, but I deem it proper to explain my reason for joining in the holding that the court below did not err in overruling appellant's motion to strike out appellee's exceptions as an entirety. Passing over our decisions of *Guthrie* v. *Howland* (1905), 164 Ind. 214, *Woodhams* v. *Jennings* (1905), 164 Ind. 555, and *Hart* v. *Scott* (1907), 168 Ind. 530, relative to motions to strike out, I place my holding on the ground that, if the facts alleged were insufficient to enable appellee to recover the damages, the demurrer should have been sustained, to the end that said company might have been able to amend, and there-

by show by what other claim, if any, it deraigned its title to the damages which were the subject-matter of the action.

Although the proceedings in question were under a special statute, yet after they reached the circuit court they were governed by the civil code in respect to matters of practice upon which the special act was silent. *Hart* v. *Scott, supra,* and cases cited. The exceptions were therefore open to amendment. *Swinney* v. *Ft. Wayne, etc., R. Co.* (1877), 59 Ind. 205. Even if it were admitted that a motion to strike out could afford a basis of error, the question remains whether this court should hold, without being in anywise advised as to the nature of the inadvertence which led to the omission to set up a possible assignment of the chattel interest, that the right of amendment is gone, and thereby cut off all right to litigate the extent of the damages on appeal from the appraisement.

This would be a case for an amendment even under the practice as it existed before the code was adopted. The leading statute of jeofails (32 Henry VIII, chap. 30, A. D. 1540, 5 Stat. at Large, p. 45) declares that the strictness which has obtained in regard to amendments is a slander on the common law, and the act then proceeds greatly to enlarge the authority to amend for mistakes in form, substance, insufficiency of the pleadings, etc.

Our code fairly breathes with the spirit of amendment. If the court sustains or overrules a demurrer, the party affected by the ruling may plead over or amend. §§347, 351 Burns 1908, §§342, 346 R. S. 1881. No variance shall be deemed material unless it shall have actually misled the adverse party to his prejudice in maintaining his action or defense upon the merits. §400 Burns 1908, §391 R. S. 1881. Any pleading may be amended by either party, of course, before the pleading is answered. §403 Burns 1908, §394 R. S. 1881. The court may at any time, within its discretion, permit any material allegation to be inserted when it does

not substantially change the claim or defense, and may also relieve a party within two years of a judgment taken against him through his inadvertence, surprise or excusable neglect. §405 Burns 1908, §396 R. S. 1881. A pleading cannot be rejected as sham unless it plainly appears to be false in fact and intended merely for delay. Section 391 Burns 1901, §382 R. S. 1881. It seems almost unnecessary to point out that statutes allowing amendments are remedial in their character, and are, therefore, to be liberally construed. 1 Ency. Pl. and Pr., 516. In *Blake* v. *Minkner* (1894), 136 Ind. 418, 421, this court said: "Under our code, the greatest liberality is shown in permitting amendments to the original complaint, not only amendments thereto may be made, but an amended complaint stating a new cause of action may be filed. It is only where the amendment involves the statute of limitations that a different rule applies." In *Burr* v. *Mendenhall* (1875), 49 Ind. 496, it was held within the discretion of the court to permit the plaintiff, after the issues had been closed, to amend his complaint by adding a new cause of action. In *Levy* v. *Chittenden* (1889), 120 Ind. 37, it was said: "That justice may be done between the parties, our code is very liberal in its provisions with reference to amendments, and the *nisi prius* courts are given a wide discretion in this regard. Before entering upon the trial of a cause the trial court may grant permission to the parties to amend their pleadings to almost any extent."

The practice concerning amendments is especially liberal as regards the answer of the defendant, since a denial of an amendment may prevent him from defending upon the merits. 1 Ency. Pl. and Pr., 518; *VanNess* v. *Bush* (1860), 22 How. Pr. 481. In Bliss, Code Pl. (3d ed. by Johnson), §430, it is said: "In regard to the defense, we do not find the same limitation upon the power of amendment. It frequently happens that a defendant seeks, by amending his answer, to set up a defense entirely new, as frequently, perhaps, as to perfect the statement of one already pleaded;

and the plaintiff's rights are not affected by permitting him
to do so. 'A plaintiff cannot be said to have a right to de-
prive a defendant of the privilege of setting up a defense
which, from any excusable cause, he has neglected to do, or
has done in such a manner as to make it unavailable; and
when a judge, in the exercise of his discertion, grants a de-
fendant this privilege, he does not thereby affect the sub-
stantial right of the plaintiff. It deprives him of nothing.
\* \* \* Neither can an order allowing a defendant to set
up an additional defense be said to involve the merits. The
cause of action on which the plaintiff relies remains as he set
it forth in his complaint, and whatever were his merits when
he brought the action they continue the same.' " In *Brown*
v. *Bosworth* (1885), 62 Wis. 542, the court says: "Any de-
fense to an action, whether originally pleaded, or subsequent-
ly brought in by amendment, is pertinent to the cause of
action stated. The plaintiff may amend in any particular
pertinent to the cause of action, and which does not change
it, and the defendant may do the same thing, although
amendment by him may involve departure from or incon-
sistency with former defenses, or introduce those which are
new or different."

In *Swinney* v. *Ft. Wayne, etc., R. Co.* (1877), 59 Ind. 205,
which was a condemnation case, it was held that a landowner
who had effected an appeal might file further exceptions set-
ting up entirely new defenses.

The case of *Clarkson* v. *Wood* (1907), 168 Ind. 582, is
much in point, since it illustrates the broadening tendencies
of the decisions of this court relative to amendments in
special proceedings. It was there said: "The trend of
.these decisions clearly indicates that in the enforcement of
a special statute the rules of our civil practice code are ap-
plicable to all matters not especially provided for in the act
itself. Amendments are favored by the code to promote
completeness in litigation, and the trial court has discretion
to allow almost any amendment that will not mislead or

prejudice the opposite party. New parties may be substituted after answer is filed. *Brunson* v. *Henry* [1894], 140 Ind. 455; *Lake Erie, etc., R. Co.* v. *Town of Boswell* [1894], 137 Ind. 336. A mistake in name may be amended. *Stanton* v. *Kenrick* [1893], 135 Ind. 382. A petition for annexation, on appeal from the board of commissioners to the circuit court may be amended by reducing the quantity of territory below what it was when the judgment appealed from was rendered. *Wilcox* v. *City of Tipton* [1896], 143 Ind. 241. It has even been held that a bad drainage petition, upon which jurisdiction has been taken, may be validated by amendment. *Poundstone* v. *Baldwin* [1896], 145 Ind. 139.''

It is stated in the brief for appellant that within ten days from the filing of the report of the appraisers the Ft. Wayne & Wabash Railway Company, on its application, was made a party defendant and filed its exceptions in the cause. The precise character of these exceptions does not appear, as amended exceptions were afterwards filed, and the clerk has omitted to set forth the original exceptions. There is nothing to indicate that appellee's claim to the damages is sham. The court upheld its exceptions on which the cause was tried, and it is to be presumed that but for that fact appellee would have at once brought forward its claim of special assignment of the damages, if such assignment existed. As the cause must go back because this court holds that the deed did not carry the damages, the amended exceptions will come in before the condemnor will be called on to address a pleading thereto, so that the cause will be back to that stage where there is a right to amend as of course..

There is nothing inconsistent between the exceptions already filed and the further fact that the damages have been specially assigned. The idea that appellee is an interloper in the proceeding is a gratuitous assumption, which may in nowise be borne out by the facts. Besides, the new matter would be in its strictest sense an amendment (see Words and Phrases, title, Amendment), since it would be but an adding

to matter already alleged so as to show the relation to the proceedings which the exceptor occupies, it having already been admitted as a party and having filed exceptions to the award. Even admitting that permitting the amendment is a matter of discretion, we cannot rule on the question, for the party has a right to support his application by affidavit.

I am therefore of opinion that the court below should not be required, by the peremptory mandate of this court, to strike out the exceptions already filed, and thereby cut off the right of appellee railway company by amendment to aver, and to prove upon the trial, that it possesses a valid assignment of the damages.

In conclusion, I may say that I am of opinion that error intervened in the admission of evidence offered by appellee, and therefore I concur in the order reversing the judgment.