GEORGE G. LIGARE, impleaded, etc.

*v.*

CHICAGO, MADISON AND NORTHERN RAILROAD CO. *et al.*

166    249
h197  [3]284
e197   286

*Filed at Ottawa April 3, 1897.*

1. RES JUDICATA—*effect of reversal of a judgment in condemnation, obtained by a city.* The reversal by the Supreme Court, without remanding, of a judgment in favor of a city in condemnation, on the ground that the condemnation was for illegal purposes and was begun under a void ordinance, does not conclude the city from afterward condemning the same property under valid ordinances and for authorized purposes.

2. WATERS—*navigable capacity of waterway is a question of fact.* The navigable capacity of an artificial slip or ditch connected at one end with a navigable stream is a question of fact, and the burden of proving such capacity is on him who asserts it.

3. EMINENT DOMAIN—*a city has power to alter or widen its streets.* A city has power to alter and widen its streets for purposes authorized by law, and the courts will not interfere with their discretion in that regard, in the absence of its abuse.

4. SAME—*consent of city not required before condemning right of way of railroad.* The consent of a city is not a necessary prerequisite to the exercise of the statutory right to condemn private property within its limits for the right of way of a railway company organized under the laws of this State.

5. SAME—*what is market value, as the measure of damages in condemnation.* The market value of property is the price which the owner, if desirous of selling, would, under ordinary circumstances surrounding sales of property, have sold it for, and what a person desirous of purchasing would have paid for it.

6. SAME—*market value allowed must be for its best and most valuable use.* The owner of property condemned for public use is entitled to its highest market value for the uses and purposes for which it is most valuable to him or for which it may be best adapted.

7. RAILROADS—*when railway company may fix the terminus of its road in a city.* A power conferred by a railroad company's charter to construct and operate its road "from" a certain city to another point, authorizes the company, in the absence of an ordinance to the contrary, to fix its terminus at any point within such city.

8. EVIDENCE—*petitioner's contract to convey a portion of the property sought to be condemned is inadmissible.* An agreement between the petitioner in condemnation and another railroad, to convey to the latter a portion of the property sought to be condemned, cannot be introduced in evidence by the defendant, as tending to establish the market value of his property.

MAGRUDER, C. J., dissenting.

APPEAL from the County Court of Cook county; the Hon. O. N. CARTER, Judge, presiding.

The appellee railroad company on May 3, 1893, filed its petition in the county court to condemn for right of way or track purposes the north thirty feet of lot 1, in block 10, of south branch addition to Chicago, and that part of the west half of Ogden slip adjacent, and on July 25, 1893, the appellee the city of Chicago filed its petition to condemn for its uses as a public street, in widening Archer avenue, the south twenty feet of said lot 1 and all of lot 2, in said block 10, and the west half of that part of Ogden slip adjacent. The property thus taken, except Ogden slip, together constituted a tract one hundred feet, fronting on Ogden slip and extending back two hundred feet. Ogden slip was a waterway about seventy feet wide opening into the south branch of the Chicago river, and whether it was a mere private ditch or canal or a public navigable waterway was a question in dispute.

The petition of the city was filed in pursuance of an ordinance passed by the city council July 14, 1893, providing that Archer avenue be extended, opened, widened, altered and laid over and upon the seventy feet above

mentioned, and that part of the west half of Ogden slip adjacent be permanently filled with earth. In 1889 the city had passed two ordinances providing for condemning the same one hundred feet for widening Archer avenue, and for the location, in addition to the one track already established, of six railroad tracks in Archer avenue as already laid out and in the north thirty feet of the one hundred feet added, leaving seventy feet of the added part unobstructed by railroads other than street railways, and upon its petition obtained a judgment condemning said one hundred feet for the widening of this street. The premises had formerly been leased to the Joliet Stone Company for ten years by lease expiring May 6, 1896. An assignment of this lease was obtained for the benefit of the appellant railroad company by purchase of the assignee. Pending the appeal to this court prosecuted by Ligare, the present appellant, possession was taken of the property, the six additional railroad tracks were laid and the street was widened and opened for travel, but Ogden slip was, by order of the court, left unfilled. On hearing the appeal this court reversed the judgment of condemnation without remanding the cause, holding that the ordinances under which the proceedings were had were null and void. (See *Ligare* v. *City of Chicago*, 139 Ill. 46, for a full statement of that case.) The premises as they appeared before the street was widened and the additional tracks laid are shown by a plat set out on page 50 of the above case. After that decision, and in May, 1893, the appellee railroad company filed its petition, as above stated, to condemn the thirty feet which it already occupied with its tracks by virtue of its contract with the city under the ordinances of 1889, and the city, in pursuance of its ordinance of July 14, 1893, filed its petition to condemn the seventy feet already occupied by it as a part of Archer avenue. The following plat, made an exhibit to the petition, shows the situation of the premises as they appeared at that time:

By agreement between the railroad company and the city the company bound itself to pay all costs, expenses and damages incurred by the taking and appropriating of the property for street purposes.   All other property necessary for the uses of appellees was obtained by purchase, or by condemnation in other cases.   Further facts are stated in the opinion of the court.

C. C. BONNEY, and R. S. THOMPSON, for appellant.

ELBERT H. GARY, for appellees.

Per CURIAM:   The grounds upon which we are asked to reverse this judgment may be reduced to three, and stated as follows:

*First*—It is contended that the proceedings are in contempt and defiance of the former opinion and judgment of this court reported in *Ligare* v. *City of Chicago*, 139 Ill. 46; that, rightly viewed, they are. a mere attempt to obtain a rehearing and reconsideration of that case.

*Second*—It is contended that Ogden slip, a part of which is also condemned, and which, by the ordinance, is ordered to be filled, is a public navigable waterway, and was so declared in the *Ligare case*, *supra*, and that the city of Chicago. had no power to order it filled, and that no obstruction can be placed in, over or upon it without permission of the Secretary of War, under the act of Congress.

*Third*—It is claimed that the trial court erred in its rulings in the admission and exclusion of evidence, and in instructing the jury, in relation to the measure of damages.

As we understand the argument of counsel, it is not claimed that appellees are precluded by a former adjudication from condemning the property in question for their respective uses, but, rather, that it sufficiently appears from the proceedings that the purpose for which the condemnation is sought is the same as it was in the

former case, and which was by this court in that case declared illegal. In the former case the appellee railroad company was not a party, but the petition was filed by the city of Chicago to condemn, as alleged, for street purposes, in widening the same street, the same one hundred feet of ground sought to be taken in these two consolidated cases; but it appeared by the two ordinances in question in that case, that the purpose of the proceeding was to surrender all of Archer avenue, as theretofore opened, to certain railroad companies, and also to surrender the north thirty feet of the one hundred feet sought to be condemned, to the appellee company, in which to lay its tracks, leaving the remaining seventy feet for ordinary street purposes, the consideration being, that the appellee company was to pay all the costs, expenses and damages consequent upon the taking of the entire tract of one hundred feet. It was held in that case that the city had no power to surrender Archer avenue, as already established, to the exclusive use of the railroads, and that where it plainly appeared that such would be the effect of the laying and use of so many tracks as there attempted to be authorized, it was immaterial that the ordinance did not, in terms, provide for such surrender; and it was further held that it appeared that the purpose for which the thirty feet was sought to be taken was to devote it to the uses of the appellee railroad company, and that the city had no power to condemn property for railroad purposes exclusively; and the two ordinances then in question, and which were the foundation of the condemnation proceedings, were declared null and void, and the judgment of the trial court was therefore reversed without remanding the cause.

We do not understand counsel for appellees as undertaking here, on this branch of the case, to call in question the legal principles there announced, and which would seem to be too plain for controversy, but, on the other hand, it seems that the effort is made to avoid the errors

which in the first case were found to be fatal. It was not held in the former case that the appellee railroad company had no power to condemn for its uses the thirty feet in question, for it had made no attempt to do so; nor was it held that the city had no power to alter or widen Archer avenue at that locality by taking for the purpose the seventy feet in question. Indeed, it was expressly said in the former case: "We do not deny that the city has power to widen streets generally, and that, when it has undertaken to do so, the motives that may have actuated those in authority are not the subject of judicial investigation; but the purpose for which a thing is done is very different from the motives which may have actuated those by whom it is done, and is, in the present instance, a legitimate subject of judicial investigation, for the right to exercise the power of eminent domain is in all cases limited by the *purpose* for which it shall be exercised, as thus private property may be condemned for public use, but it may be shown that the use in fact is not public, but private.—*Railroad Co.* v. *Wiltse,* 116 Ill. 449; *Sholl* v. *Coal Co.* 118 id. 427." And it was shown that the purpose of the condemnation was to surrender that part of Archer avenue already established, and thirty feet of the ground sought to be condemned, to the sole use of the railroad companies. But here the appellee railroad company has filed its own petition for the condemnation of the thirty feet for its own uses, and on the preliminary hearing in the county court showed that it was necessary for the location of its tracks in pursuance of its charter powers; and on the same hearing, the petition of the city having been consolidated with that of the railroad company, it was shown that the widening of Archer avenue at the place in question had become a great public necessity, for general public uses as a street.

The appellant filed his sworn preliminary objections and motion to dismiss the petitions, and presented in support thereof, on the preliminary hearing before the

court, the former proceedings in *Ligare* v. *City of Chicago*, *supra*. But no sufficient showing was made that the *purpose* of the proposed condemnation was other than as stated in the petitions, or that there was any attempted abuse of power, as appeared in the former proceedings by the city. It was not shown or attempted that by clearing the street from obstructions illegally placed in it, it would be of sufficient width for public uses as a street, and that there was, therefore, no necessity for taking appellant's land, but that the purpose was to surrender the old street to the railroads and to open a new one over appellant's property, to be used by the public in lieu of the old. On the contrary, independently of the right of the municipality to determine for itself the propriety or impropriety of altering and widening its streets and of otherwise improving the same under its charter, we think the inference is clear, from the showing made, that if all the tracks for steam railways were removed from Archer avenue except the one which appears to have been lawfully there when the first proceedings were begun, the state of travel had become such, especially in view of the difficulties in crossing Ogden slip, that it was no abuse of its power for the city to provide for the widening of this street at the locality in question.

Nor is it altogether true that the same results must follow as would have followed from an affirmance of the judgment of condemnation in the other case. As the case is now presented we have nothing to do with the question whether the additional tracks laid in Archer avenue are rightfully there or not, for, whether rightfully or wrongfully there, the city has power to alter or widen the street, and as this record does not show any abuse of such power the courts cannot interfere with its legislative discretion. (*Chicago and Eastern Illinois Railroad Co.* v. *Wiltse*, 116 Ill. 449.) The city's rights in and power over the old part of the street will remain as before. It may be, of course, true that the parties who authorized the

several proceedings may have been actuated by the same motives in all of them; but, as said by Mr. Justice SCHOL-FIELD in the other case, such motives are not the subject of judicial investigation. The purpose of the appellee railroad company in its case is to condemn the thirty feet for its own use, and the purpose of the city in its case is to condemn the seventy feet for its use, and both purposes being entirely in accordance with the statute, we cannot reverse this judgment because the record in the former case showed that the taking of the one hundred feet in that case by the city was for an illegal purpose. The two ordinances authorizing the former proceedings were void, and the ordinance authorizing this proceeding by the city, so far as this branch of the case is concerned, is valid.

As to Ogden slip, it was said in the former case that the evidence was much less satisfactory as to what this slip is than it should have been, but that there was enough, however, to show that it is a navigable waterway connected with the south branch of the Chicago river and appurtenant to appellant's lots. The evidence presented on the trial of the cases at bar, though rather deficient as to the origin of the slip, was much fuller and clearer than that presented in the other case, and we have arrived at a different conclusion from the one reached in the former case. We think the evidence fails to show that it was a public navigable waterway, but, on the contrary, that it was only a private ditch or canal, which formerly, by being dredged out, contained at times sufficient water to enable the abutting property owners to have coal, lumber and other materials delivered at their respective premises by boats from the lake via the Chicago river, but that it was not used by the public; that it was not a stream and had no current, but was rather in the nature of a stagnant pond or ditch opening into the river, and which for many years was used as a receptacle for all kinds of refuse and filth until it had practi-

cally become a public nuisance, and, so far as it extended north of appellant's land, was filled up by the abutting property owners. In some places buildings had been erected, extending to the center of what had been the waterway, and the abutting property owner immediately east of appellant's lots had filled the east half of the slip upon which his property abutted, and the filling extended beyond the center and prevented the passage of all watercrafts. While the acts of private parties in filling the slip do not show that it did not have the character of a navigable waterway, still they tend to show how the slip was used and regarded by those having the best knowledge of its character, adaptation and uses, and throw light on the question of fact whether it was a public navigable waterway or not. As to waters of this character, navigable capacity is a question of fact, and the burden of proof is on him who alleges it. (16 Am. & Eng. Ency. of Law, 245.) Reference may be had to *Joliet and Chicago Railroad Co.* v. *Healy*, 94 Ill. 416, for a discussion of the navigable character of "Healy slough."

No effort was made to prove that this slip was a natural arm or body of water of navigable capacity, extending from and connecting with the river, a navigable stream, and used as a public navigable waterway, but we are left to infer from the facts proved that it was a mere private ditch or canal, opened from the river for the length of about half a mile, by private enterprise, for the benefit of the adjacent property owners, who later, apparently by common consent and from motives of private advantage, have permanently filled the same for the greater part of its length. In this state of the record we would not be authorized to hold that it is not the subject of condemnation as private property, or that the city has no power to order the same to be permanently filled. So far as it was a thing of value, all such value taken from appellant should, of course, be compensated for in the assessment of damages; but as no

damages have been claimed for any injury to or depreciation in value of other lots not taken, it must be inferred that by the taking and filling of Ogden slip the lots not taken were not damaged or depreciated in value. In fact, it was proved on the trial that the filling of Ogden slip and the taking of the one hundred feet increased, rather than diminished, the value of the remaining lots of appellant.

In respect to the question of the power of appellees to condemn appellant's property, it was also contended that, as there was no ordinance of the city council authorizing the location of the road of the appellee company within the city limits, it was wholly without power to proceed under the statute to take proceedings for the appropriation of the property of appellant. It is a sufficient answer to this contention to say that it has been decided by this court that the consent of the city is not a necessary prerequisite to the exercise of the statutory right to condemn private property within a city for right of way of a railway company organized under the laws of this State. (*Chicago and Western Indiana Railroad Co.* v. *Dunbar*, 100 Ill. 110; *Tudor* v. *Rapid Transit Railroad Co.* 154 id. 129.) The power conferred by the company's charter to construct and operate its road from Chicago, *via* Freeport, in Stephenson county, to a point, etc., in the said county, authorized the company, so far as can be determined in this proceeding and in the absence of any ordinance to the contrary, to fix the terminus at any point in Chicago, as "Chicago" includes every part of that city. *Chicago and Northwestern Railway Co.* v. *Chicago and Evanston Railroad Co.* 112 Ill. 589.

The objections above considered were before the county court on the motion of appellant to dismiss the petitions without a trial by jury. They were overruled and the motion denied, whereupon the two cases were consolidated for the purposes of such trial. There was the usual diversity of opinion as to the value of the

premises, and the jury, after hearing the evidence, examined the property for themselves, and returned a verdict fixing the compensation at $47,000, which was more than the estimates of appellees' witnesses and much less than those of appellant's witnesses. The questions preliminary to the trial are the ones mainly argued and relied upon by counsel; but there are some objections to the rulings and instructions of the court upon the trial which come under the third ground above stated, upon which a reversal is asked. The principal complaint is, that the court, by rulings and instructions, limited appellant to the market value of his premises. The abstract contains but a very small part of the testimony of the witnesses, and gives but a very faint idea. of the attitude of the court upon that question in the admission of evidence. But a resort to the record shows that the court allowed to appellant the full benefit of everything that is claimed in the argument to be within the rules of law, and that the discussion related almost wholly to mere verbal differences in expression. It is to be remembered that the railroad company was in possession under the lease to the stone company, which would expire in May, 1896. The property was not permanently devoted to a special use, so that it could not be applied to any other, as was the case with the property in *Lake Shore and Michigan Southern Railway Co.* v. *Chicago and Western Indiana Railroad Co.* 100 Ill. 21, which could only be devoted to one special use. Appellant was the owner of the reversion after the lease to the stone company, and might devote the premises to any use that he saw fit. The evidence was that it could be used for warehouses, stores or other buildings, or applied to other uses. The question came up on the trial what the measure of damages would be, and counsel for petitioners expressly admitted that appellant was entitled to receive what a purchaser would be willing to give for the property in the market, and that if the particular use to which it was put added to

its market value, he was entitled to receive that increased value,—in other words, that he was entitled to receive the market value of his property, taking into account the best use to which it was adapted. The court held that he might prove, and permitted him at all times to prove, what was the value of the property for any and all purposes to which it could be put, and what was the highest and most valuable use to which it could be devoted. He proved that it was best adapted to railroad purposes, and showed its situation and present uses. It was proved and admitted that other railroads were in the use of the tracks over the land; that the Chicago and Alton railroad and Santa Fe railroad used such tracks for their trains, and that several other railroads did switching there. The court permitted him to prove that the property was valuable for railroad purposes, and allowed him to recover its value for that and every other purpose and use to which it could be put, but in giving opinions as to such value witnesses were required to state them as market values. Opinions were allowed as to what persons influenced by the availability of the property for railroad uses, and by every other consideration, would give for the property. Whether the use of the term "market value" was technically correct or not, the fullest opportunity was given to prove, and appellant availed himself of the privilege of proving, what the property was worth for every use to which it could be put. It appears, however, that the property had a market value in the same sense that other lands and lots have. There is no current rate or price of such property, and it has sometimes been said that where there have been no sales of similar property and no actual demand there is no market value, in the strict sense of the term. But what was certainly understood by the court and jury in this case by the term "market value" was what the owner, if desirous of selling, would sell the property for, and what reasonable persons, desirous of purchasing,

would have paid for it. As so understood, the property had a market value as much as any other lands or lots. The rule adopted was as broad as could be claimed, and was in accord with the decision in *Chicago, Burlington and Quincy Railroad Co.* v. *City of Chicago*, 149 Ill. 457, that the uses to which property is adapted must be those which enter into and affect its market value.

Questions were asked by appellant as to what the property was worth for railroad purposes alone, but this was not permitted. The railroad company being in possession and using the property as a link in its right of way, witnesses, in answering that question, would be very apt to consider its necessities, and what it would give rather than have its right of way severed and its whole line practically destroyed. One of appellant's witnesses approximated its value from that standpoint at $10 to $25 a square foot, saying that it was almost impossible to estimate the value of the property occupied as it was; that without the ownership of it the right of way would be destroyed, and that its value for the purposes then in use was simply inestimable. In the peculiar condition of the property we think the ruling was right; but whether so or not, the judgment should not be reversed, because, as already shown, the court gave appellant the benefit of all that could be claimed, by including the particular use in all the uses to which the property could be put.

Appellant offered in evidence, but the court excluded, an agreement between the petitioning railroad company, the Atchison, Topeka and Santa Fe Railroad Company and the Consumers' Gas Company for the occupation of a portion of this property, and for the conveyance to the Atchison, Topeka and Santa Fe Railroad Company of so much as was in May and July, 1893, occupied and operated by the Santa Fe road. The court was right, as the offered proof had no tendency to establish value, and its only effect would be to make the jury understand that petitioner was making money out of the property.

The instructions were in accordance with the foregoing rulings in the admission of evidence. The jury were told that appellant was entitled to the actual cash market value of the property for the best and most valuable use to which it was adapted, provided such use entered into and affected its market value; that the market value was the price at which the owner, if desirous of selling, would, under ordinary circumstances surrounding the sales of property, have sold the property for, and a person desirous of purchasing would have paid for it; that if the property had a special value to appellant, from whatever cause, growing out of the best use to which, from its situation, it was adapted, such special value belonged to appellant and he was entitled to have it considered, and that he was entitled to the market value of the property for the uses and purposes for which it was valuable to him or to which it was best adapted. The limitation to such price as the property would bring under ordinary circumstances surrounding the sales of property was necessary to exclude a price based upon necessity of the railroad company, or upon what it would pay rather than to get off the property. It did not, as is contended, exclude sales or values arising from the adaptation or value of the property for railroad purposes, but the best and most valuable use to which it was adapted was expressly included in the instructions as a basis of value. As general rules of law the instructions were correct, and there were no circumstances which excepted the case from them.

The jury saw the property, and we cannot say the amount they awarded was not ample compensation for it.

The judgment will be affirmed.

*Judgment affirmed.*

Mr. CHIEF JUSTICE MAGRUDER, dissenting.