(No. 12214.—Judgment affirmed.)
THE CITY OF CHICAGO, Appellee, vs. ARTHUR L. FARWELL
et al.—(JAMES S. KIRK & Co., Appellant.)

*Opinion filed December 18, 1918—Rehearing denied Feb. 17, 1919.*

1. EMINENT DOMAIN—*general rule as to time when property is to be valued.* In a condemnation proceeding under the Eminent Domain act the time of filing the petition is considered as the time when the property is taken and compensation is to be ascertained, and the evidence as to the value of the land condemned must be with reference to the time of filing the petition and not of the trial.

2. SAME—*rule as to time for valuation where proceeding is under the Local Improvement act.* Under section 18 of the Local Improvement act the time of filing the commissioners' report is deemed the application for judgment of condemnation of the property sought to be taken for the improvement, and the value of the property is to be fixed as of the time of the return and filing of such report.

3. SAME—*defendants cannot call commissioner as a witness to impeach his report.* In a condemnation hearing under the Local Improvement act the defendants are not entitled to call one of the commissioners as a witness and interrogate him as to the elements of value he considered in making up the report and upon what basis it was made, for the purpose of impeaching such report.

4. SAME—*what constitutes market value is a question of law.* What constitutes market value is a question of law, and is the price which the owner, if desirous of selling, would under ordinary circumstances surrounding sales of property have sold the property for, and which a person desirous of purchasing but not compelled to do so would have paid for it.

5. SAME—*when market value is not the legal standard.* There are a few exceptional cases where market value cannot be the legal standard of compensation in a condemnation proceeding because the property is of such a nature and applied to such a special use that it cannot have a market value, as in the case of a church, college, cemetery, club house or railroad terminal, and as to such property any evidence available to prove value is permitted.

6. SAME—*when property is not devoted to a special use.* The fact that property, a part of which is sought to be taken by condemnation, is used as a soap factory and that the business carried on has been established many years and is very extensive does not make the property devoted to such a special use as takes it out of the general rule making market value the measure of compensation.

7. SAME—*when "going value" or "efficiency value" cannot be considered.* In a proceeding to ascertain compensation for a part of the ground and buildings of a soap factory taken for public use the jury should consider the market value of the land and buildings so taken, and the machinery therein, as a part of the whole plant, but cannot consider the so-called "going" or "efficiency" value, based on an estimated value of the owner's established and successful business and anticipated future profits from such business.

CARTER, J., dissenting.

APPEAL from the County Court of Cook county; the Hon. WILLIAM L. POND, Judge, presiding.

HOLT, CUTTING & SIDLEY, and WILSON, MOORE & MC-ILVAINE, (CHARLES S. HOLT, and N. G. MOORE, of counsel,) for appellant.

SAMUEL A. ETTELSON, Corporation Counsel, EUGENE H. DUPEE, WILLIAM A. BITHER, WILLIAM J. DONLIN, and WILLIAM H. DILLON, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The city of Chicago provided by ordinance for an improvement consisting of a thoroughfare with two levels extending north from East Randolph street along Michigan avenue over the Chicago river and thence north to the center line of East Chicago avenue, which is fully described in *City of Chicago* v. *Farwell,* 284 Ill. 491. The appellant, James S. Kirk & Co., owned about an acre and a half of ground of irregular shape adjoining the Chicago river on the north and it was necessary to acquire for the improvement about three-tenths of the tract on the west side. The whole of the land was improved with buildings and machinery for the manufacture of soap, and upon a jury trial there was a verdict fixing the compensation to be paid for the portion taken at $433,096, on which judgment was entered. The record has been brought to this court by appeal.

The trial occupied thirteen weeks, making a record of nearly 1000 pages, and the briefs and arguments in this court cover about 400 pages. In the brief for the appellant the points relied upon for reversal are stated under seventeen headings, but the argument which follows in their support does not regard the points, either in their order or in form. In the brief for the appellee the points are stated under twenty headings and they are not followed in the argument. The court is better able to understand and consider the questions involved in the review of a record where there is a systematic arrangement of points and arguments, but in this case the questions involved are neither numerous nor complex, and it will be the endeavor of the court not to omit or overlook anything material to a decision.

The appellant offered to prove that the buildings on the property had advanced in market value $150,000 and the machinery $300,000 after the proceeding was begun, and insisted that the compensation was to be fixed as of the time of the trial. The court refused to adopt that view of the law and the evidence was not admitted. The constitution provides that private property shall not be taken or damaged for public use without just compensation, and it is always held that the compensation is to be determined as of the time of the taking. There is a diversity of rule in different jurisdictions as to the time when a taking for public use occurs, but in this State that question has passed beyond the stage of discussion and has become a fixed rule, which is, that the compensation is to be determined as of the date of filing the petition and not at the time of the trial. (*South Park Comrs.* v. *Dunlevy,* 91 Ill. 49; *Dupuis* v. *Chicago and North Wisconsin Railway Co.* 115 id. 97; *Chicago, Evanston and Lake Superior Railroad Co.* v. *Catholic Bishop of Chicago,* 119 id. 525; *Lieberman* v. *Chicago and South Side Rapid Transit Railroad Co.* 141 id. 140; *Chicago and State Line Railway Co.* v. *Mines,* 221 id. 448.) The rule so established was undisturbed by

286 — 27

the decision in *Sanitary District* v. *Chapin,* 226 Ill. 499, but was there re-asserted, and the petition was dismissed for the simple reason that the settled rule is that compensation is to be fixed at the time of filing the petition. The sanitary district had filed a petition to condemn land and had made no attempt to prosecute the suit for more than four years and three months. There was a motion to dismiss the petition for want of prosecution, and the court was sustained in dismissing it for want of due diligence and the necessary unjust result. The rule adopted and enforced is not only in accordance with the one generally recognized but is the only feasible and practicable rule. Property may decrease in market value after a petition is filed, as in the *Dunlevy case,* or the projected improvement may cause a great enhancement of market values from general benefits affecting an entire community or a large portion of it, for which the public could not in justice be required to pay. The original petition of the city was filed on March 14, 1914, and the commissioners appointed by the court filed their report on July 15, 1915, and the separate trial as to this property began on October 2, 1917. The court adopted the time of filing the commissioners' report as the date for fixing the compensation, and this was right, since section 18 of the Local Improvement act provides that the return and filing the report shall be deemed an application by the petitioner for judgment of condemnation of the property to be taken or damaged and for a confirmation of the assessment of benefits. By that statute the application for condemnation begins when the petitioner files the report of the commissioners.

The report awarded compensation and damages as to fifty-one pieces of property. Summons was issued the day the report was filed. Trial on legal objections occupied the court until January 19, 1917. Trials on awards and assessments began February 6, 1917, and there was no delay chargeable to any party. If it should be held that the con-

stitution requires the compensation to be fixed when the money is paid and possession taken another trial would be necessary, since part of the money must come from special assessments, and payment could not have been made at the time of the trial.

The appellant called Walter H. McDonald, one of the commissioners who made the report, and proposed to examine him as to what elements of value he put in his award. and upon what basis it was made, and the court refused to allow the examination, which was correct. (*Wright* v. *City of Chicago,* 48 Ill. 285; *Quick* v. *Village of River Forest,* 130 id. 323; *Washington Park Club* v. *City of Chicago,* 219 id. 323; *City of Belleville* v. *Mitchell,* 273 id. 136.) The argument that a commissioner, like a juror, may be called to sustain what he has done does not apply here, since the manifest and only purpose was to impeach the report, which the appellant claimed did not award sufficient compensation.

The court fixed the market value of the property to be taken as the measure of compensation, and appellant contends that the question whether the property had a market value was one of fact, which should have been submitted to the jury. The law is that market value is the measure of compensation. (*Haslam* v. *Galena and Southern Wisconsin Railroad Co.* 64 Ill. 353; *Jacksonville and Southeastern Railway Co.* v. *Walsh,* 106 id. 253; *Chicago and Evanston Railroad Co.* v. *Jacobs,* 110 id. 414; *Kiernan* v. *Chicago, Santa Fe and California Railway Co.* 123 id. 188; *Chicago, Peoria and St. Louis Railway Co.* v. *Greiney,* 137 id. 628.) What constitutes market value is a question of law, and is the price which the owner, if desirous of selling, would under ordinary circumstances surrounding the sales of property have sold the property for and what a person desirous of purchasing, but not compelled to purchase, would have paid for it. (*Ligare* v. *Chicago, Madison and Northern Railroad Co.* 166 Ill. 249.) There are

a few exceptional cases in which market value cannot be the legal standard because the property is of such nature and applied to such special use that it cannot have a market value, such as a church, college, cemetery, club house or terminal of a railroad. (*Lake Shore and Michigan Southern Railway Co.* v. *Chicago and Western Indiana Railroad Co.* 100 Ill. 21; *Chicago and Northwestern Railway Co.* .v. *Chicago and Evanston Railroad Co.* 112 id. 589; *Sanitary District* v. *Pittsburgh, Ft. Wayne and Chicago Railway Co.* 216 id. 575.) As to such property the law permits a resort to any evidence available to prove value, such as the amount of business done or the use made of the property, and the like. There was no evidence tending in any degree to bring the property of appellant within any exception so recognized. The development of an industry from the housewife's ash-leach and soap-kettle in the back yard to the great soap factory, or from the smokehouse and annual butchering to the immense plant of the packer, or from the vinegar barrel to the factory, does not change the nature of things, and there is nothing about making soap which renders the business peculiar or different from any establishment where a household necessity is made. It requires no franchise to make soap, and a factory making large quantities of soap and established forty years is not different in its nature from a small one established yesterday. There being no evidence offered or available to bring the soap factory within an exception to the established rule of law, the court did not err in the holding.

The principal and substantial complaint is that the appellant did not receive just compensation for the property taken, and appellant's counsel say that by its evidence the whole plant was worth, as a living plant, $2,315,961, and, excluding enhancement of value by the improvement of what will be left, it will be worth no more than $750,200, entailing a loss of $1,565,761; and, even applying the enhancement in value of the remainder by the improvement,

the net loss would be $1,481,247.54, while the verdict is for only $433,096. This difference arises not so much from divergent opinions of witnesses concerning values as to a difference concerning what was taken for the public use and to be compensated for in money. The constitution requires that the owner of property taken for public use shall be compensated by substituting for the property an equivalent in cash, so that he will be as well off afterwards as before. (*Phillips* v. *Town of Scales Mound,* 195 Ill. 353.) This was conceded at the trial and is now conceded, and it is also admitted that in determining the value of the part taken it was to be treated and regarded as a part of the whole of the plant and its value estimated on that basis. The part not taken would be enhanced in value by the improvement, and the single question was what would be just compensation for the part taken for the public use. On that question, cases where compensation for land taken is awarded and injuries, inconvenience and damage will result in the use of the remainder, for business or otherwise, and a gross sum is allowed for both, are of little assistance, and rather tend to confuse issues which under the law must be kept separate and distinct.

The case of *Jeffery* v. *Osborne,* 145 Wis. 351, relied upon and quoted from by counsel for appellant, illustrates the want of application of those cases to the case in hand and their tendency to confuse different questions. The statute of Wisconsin authorizes an award in a single sum of the value of land taken and damages sustained by the owner by reason of the taking. An electric railroad company filed its petition to condemn a strip 100 feet wide through the automobile plant of Thomas B. Jeffery at Kenosha, and there was a judgment for $125,000, which was reversed by the Supreme Court. (*Jeffery* v. *Chicago and Milwaukee Electric Railroad Co.* 138 Wis. 1.) On a second trial there was a judgment for $133,000, and on the second appeal the judgment was affirmed. One of the elements of

damage claimed was inability to procure land for expansion of the plant, and the court refused to admit the tender of an option for adjoining land for that purpose. Witnesses were examined and questions submitted to the jury to determine the value of the land taken, considered as an integral part of the entire plant, and in what amount, if any, the market value of the real estate not taken was damaged by taking the strip. The Supreme Court decided that the exclusion of the option was right, but the examination of the witnesses and the questions to the jury above stated inevitably duplicated damages. On the second appeal the Supreme Court held the first decision (as to the option for expansion of the works by the expenditure of a comparatively insignificant sum of money) wrong, but said that the former opinion was conclusive so far as that particular case was concerned. As to the award of compensation the court said: "Since a very early day in this State it has been very well settled that in awarding damages for the taking of lands for railroad or highway purposes the strip taken is to be valued as part and parcel of the entire tract of which it formed a part; that the land owner is entitled to recover the difference between the fair market value of the whole property before the taking and the value of what remains after the taking." Witnesses from Racine who knew nothing about the value of lands at Kenosha were permitted to testify as experts, and the Supreme Court justified the ruling and said that if the question at issue had been the question of the value of the strip as mere land the witnesses would not have been qualified; but that was not the question, and there being practically no dispute as to the value of the strip as mere land and the witnesses being experts in the manufacturing business, they were qualified to testify on the question of the value of the manufacturing property before and after the strip was taken. It was in determining the qualification of the witnesses, as experts, to give opinions on the value of the whole plant before and

after the strip was taken that the court said the question was as to the value of the strip as part of the manufacturing plant conducted by the plaintiff, and that was the question upon which the witnesses testified.

The difference which developed on the trial in the case at bar was whether just compensation included what was called "efficiency" value of the plant from its capacity for earning profits as a soap manufactory. The witnesses for the appellant were intelligent, experienced and capable of giving an opinion as to what they called "going" value or "efficiency," and one of them testified that such value was $360,000 and another that it was $500,000, based on the fact that an established business was carried on there and the amount of soap produced in a year and the expense of producing the soap. This value would be included in just compensation if the city were taking the business or depriving appellant of it, but the law is fixed in this State that whenever property has a market value, evidence of profits derived from it is not admissible nor a basis for fixing compensation. (*Jacksonville and Southeastern Railway Co.* v. *Walsh, supra; Braun* v. *Metropolitan West Side Elevated Railroad Co.* 166 Ill. 434; *Cook & Rathborne Co.* v. *Sanitary District,* 177 id. 599; *West Chicago Park Comrs.* v. *Boal,* 232 id. 248.) If the owner of land has devoted it to a special use, such as a track for training which will be destroyed, he is to be compensated for the loss of the land for that use, (*St. Louis, Jerseyville and Springfield Railroad Co.* v. *Kirby,* 104 Ill. 345,) but not for his ability or success as a trainer or the superiority of the horses he trains. If he has devoted his farm to the dairy business and for that use has built improvements that will be destroyed he is entitled to what the land is worth for that use to him or anyone else, (*Chicago and Northwestern Railway Co.* v. *Chicago and Evanston Railroad Co. supra,*) but not on the basis that his cows give large quantities of milk with a high percentage of butter fat. The

value of land, with its adaptation to its highest and best use, is included and business profits are excluded. Cases where a plant and business are taken, which are relied upon, are quite different. One such case is *Gloucester Water Supply Co.* v. *City of Gloucester,* 179 Mass. 365. The statute authorized the water company to sell its plant to the city at an appraised value and the city could purchase the company's property rights, including a franchise which was practically an exclusive one. The property included the business, which could not be carried on elsewhere, but in the case of this soap factory the business was not taken. When the appellant takes its departure from this place, which it is agreed will not be suitable for a soap manufactory, the business will not be left behind. Neither are cases involving the fixing of rates for a public utility, where the question is whether the rate fixed is reasonable and compensatory, applicable in any way to the question here under consideration. *DesMoines Gas Co.* v. *DesMoines,* 238 U. S. 153, was a case of that kind. The gas company filed a bill to enjoin the enforcement of an ordinance fixing gas rates as confiscatory, and the going value of a long established and successful business was to be taken into account in determining the value of the gas company's property for the purpose of testing the reasonableness of the rate. There can be no controversy about the justice of the rule applied in determining a rate which would be remunerative to the owners of the plant and business. There was nothing in the character of the real estate or the location of appellant essential to making soap, and there was no greater efficiency of the buildings or machinery because they had been employed in that business than the capacity of any other like buildings and machinery applied to the same use. No doubt the business of the appellant is property of great value because it has been established for a great many years, and its products of American Family soap and Jap Rose soap have come into

general use and have become great favorites with the users
of soap. There was no evidence that can fairly be said
to prove or tend to prove that the business carried on at
the plant enhanced the value of the land, buildings or ma-
chinery, and what was called "efficiency" value was noth-
ing but an estimated value of the established and successful
business of the appellant and anticipated profits from carry-
ing on the business in the future. The rule adopted by the
court was the correct one.

Errors are assigned upon the giving of instructions, but
they were in harmony with what has been already said,
and the only one particularly objected to is the fifteenth,
which defined the meaning of real estate as vacant land,
together with all buildings and structures thereon, and the
machinery, apparatus and equipment upon the land and in
the buildings, with directions to consider the vacant land
and such buildings, structures, machinery and equipment
as a whole, and to determine from the evidence whether
or not the buildings, structures, machinery or equipment
enhanced the fair cash market value of the vacant land by
the amount of the sound value of such buildings, structures,
machinery or equipment. The definition of real estate was
faultless and the instruction told the jury to consider the
property as a whole. The rule adopted and enforced
throughout the trial was that appellant was entitled to the
highest cash market value of the part taken, considered
as a part of the whole, for the best use to which it was
adapted, and the examination of witnesses was upon that
basis. The court instructed the jury to allow appellant the
fair cash market value for its highest and best use of that
part of the tract taken when considered in its relation to
and as a part of the entire tract, and not as a separate and
distinct piece of real estate disconnected from the residue
of the tract. The objection is that the instructions did not
include the so-called "efficiency" value, which did not en-
hance the value of the real estate but was only an element

of property which was not taken from the appellant. Regarding the instructions as a whole there is no valid objection to them.

Before the taking of evidence the jury visited and inspected the plant and property and after the evidence was concluded again made a personal examination, and that fact is to be given proper weight in determining whether the conclusion of the jury was a just and proper one. Eliminating the improper elements insisted upon by the appellant, the verdict was within the range of the evidence and can not be disturbed as contrary to it.

The judgment is affirmed.       *Judgment affirmed.*

Mr. JUSTICE CARTER, dissenting:

I do not concur in the conclusions reached on several questions decided in the foregoing opinion. I am not in accord with the finding of the opinion that the date of the filing of the commissioners' report in the county court must be fixed as the date of valuing the property condemned. The commissioners' report was filed July 15, 1915. The trial as to this property began October 2, 1917, and a judgment on the whole case was entered March 8, 1918. Counsel for appellant offered to prove on the trial that its machinery had advanced in market value between the date of the filing of the commissioners' report and the time of the trial over $300,000; that such machinery would cost that much more to re-instate it in a new building. They also offered to prove that the buildings of appellant were worth $150,000 more at the time of the trial than at the filing of the commissioners' report. The evidence in the record seems to show, without controversy, that the advance in building cost in that time was over twenty-five per cent. The city's figures appeared to show that the enhanced cost of the buildings between those dates would have been at least $105,000, while the testimony of appellant's witnesses

is to the effect that the advance in the cost of the build-ings would be $262,000.

The general rule is that damages should be assessed and compensation determined as of the time of the taking. Dif-ficulties, however, sometimes arise in determining when the actual taking occurs and different rules have been laid down in different jurisdictions, doubtless because of the diversity of constitutional and statutory provisions governing emi-nent domain proceedings. In several jurisdictions the rule is that the date of filing the petition in eminent domain pro-ceedings will be taken as the time when damages should be assessed, while in others the date is determined by that of the issuance of summons or the filing of the bond or assess-ment, appraisement or award, and in some States the rule varies in different classes of takings. (10 R. C. L. 214; 2 Lewis on Eminent Domain,—3d ed.—sec. 705.) Most of the authorities state that in condemnation proceedings the value of the land should be measured at the time of the taking or its appropriation by the public authorities. In *Sanitary District* v. *Chapin,* 226 Ill. 499, this court said (p. 503) : "The provision of the constitution that private property shall not be taken for public use without just com-pensation requires that the owner shall receive the market value of his property at the time of the taking, and as to this proposition the courts are agreed. (Citing authori-ties.) There is, however, a great diversity of opinion as to when the property is taken, in legal contemplation, for the public use." (This decision is found with an extensive note in 9 Ann. Cas. 113.) In *Cook* v. *South Park Comrs.* 61 Ill. 115, this court held (p. 122) that the legislature of the State could not by arbitrary enactment take property for public use and limit the owner's right to recover com-pensation to the date of the law, when the property might greatly enhance in value between the passage of the law and the commencement of the proceedings to condemn. In that case the court said that the date of the filing of the

petition might be, in practice, a fair one in the average case, commenting on the fact that the Eminent Domain statute, as construed by this court, was evidently intended to dispose of the proceedings in a summary and speedy manner without delay. (See, also, to the same effect, *Moll v. Sanitary District,* 228 Ill. 633.) In this last case it was held that under the peculiar circumstances of the case the judgment in favor of the property owner, on which interest could be drawn, should be reckoned from the date when the owner was deprived of his property and not from the date when the petition under which the property was condemned was technically filed.

Section 13 of article 2 of the constitution of 1870 provides that "private property shall not be taken or damaged for public use without just compensation." It is manifest, under the decisions of this State and those of other jurisdictions construing similar constitutional provisions, that the owner should be compensated for the amount of his loss. This court has said that in condemnation cases the owner of the property "is not required to make any pecuniary sacrifices at all. He is entitled to whatever the property is worth to him or to anyone else, for any purpose to which it is adapted." (*Chicago and Northwestern Railway Co. v. Chicago and Evanston Railroad Co.* 112 Ill. 589.) In discussing this question all courts have endeavored to lay down a rule that is certain, simple and practical and that will do justice in the greatest number of cases. Beyond question, in the ordinary condemnation proceeding, which can be summarily disposed of, the rule adopted by the trial court in this case will tend to do justice in the greatest number of cases and is certain and simple and should therefore be followed in such ordinary cases, but if the condemnation proceeding extends through years, it is apparent that the enhancement or depreciation of the property during that time might be very large, and to follow arbitrarily the date of filing the petition or the commissioners'

report will in some cases do great injustice. As this court said in *Sanitary District* v. *Chapin, supra,* in discussing a similar question (p. 505) : "The argument does not meet the fact that there has been a great advance in the value of the property, and if the petitioner can now maintain the action and have the rule applied that the property was taken when the petition was filed, it would be able to acquire the property at much less than its value at the actual taking." In order to do justice in each case the rule ought to be, of course, as nearly as practicable to enforce the fixing of the time of the actual taking or appropriation by the public authorities as the time of fixing the valuation. As was said by Chief Justice Shaw in *Parks* v. *City of Boston,* 32 Mass. 198, on page 208 : "The true rule of justice for the public would be, to pay the compensation with one hand whilst they apply the ax with the other." This doctrine could be readily applied in the ordinary proceeding in an agricultural community, where the condemnation could be summarily and quickly disposed of, but this rule must be departed from, as intimated by Chief Justice Shaw in the case just quoted from, when sometimes it is necessary, by the forms of law, to conduct a lengthy inquiry. In a case of that kind such a rule may be unfair, for the public authorities might not take the property until long after the trial. Under our statute, until judgment is entered, the city, in a proceeding of this kind, might dismiss its proceedings without the consent of the parties whose lands were sought to be condemned,—and this notwithstanding that judgment had been entered as to part of the property. *City of Evanston* v. *Knox,* 241 Ill. 460.

It is true that it may be. impracticable, under our method of procedure, to ascertain the value at the time of the actual taking, as that would necessitate a supplemental hearing, but that does not answer the argument that in a proceeding of this kind to ascertain the value we should approximate, as nearly as practicable, to the actual time of

the taking or appropriation. In an ordinary case, which is quickly disposed of, the time of filing the petition will generally give a fair value as to the interests of all parties, yet to enforce that rule arbitrarily in all cases, even when years have elapsed between the filing of the petition and the time of the hearing to fix the value, will result in great wrong and injustice. It is true, as argued by counsel for appellee, that in exercising the right of eminent domain the question of just compensation to be paid to the owner means that such compensation is to be ascertained that is not only just to the individual whose property is taken but to the public which is to pay for it, (*Searl* v. *School District,* 123 U. S. 553,) and that the provision in our constitution that private property shall not be taken or damaged for public use without compensation is not intended to reach every possible injury that may be occasioned by a public improvement, (*Illinois Central Railroad Co.* v. *Trustees of Schools,* 212 Ill. 406,) but the provision of our constitution as to the payment of just compensation for taking private property was intended to do equal justice, as nearly as possible, to all parties interested, in every case. To hold, as does the opinion in this case, that because of the general rule that has been fixed in this State that in the ordinary case the date of the filing of the petition in a condemnation proceeding shall be assumed as the valuation date in all cases, is to follow an arbitrary rule not in harmony with justice. To argue that it is impracticable to change the date to the time of the hearing in a case such as is here before us, is to concede that under our forms of law justice cannot be properly administered. To me this seems to be sacrificing substance to form. The law is not so inelastic as to require this conclusion. This arbitrary rule has been departed from heretofore in *Sanitary District* v. *Chapin, supra,* and *Moll* v. *Sanitary District, supra,* and the reasoning of this court in *Cook* v. *South Park Comrs. supra,* is clearly against such an arbitrary conclusion.

I agree with the opinion that in the ordinary case the time for filing the petition,—or, under the Local Improvement act, the date of filing the commissioners' report,—might well be taken, but in a case like this, where property has greatly enhanced in value since the beginning of the proceedings or has greatly depreciated in value during that time, such a rule, if strictly enforced, will necessarily not bring just and equitable results. In my judgment it is entirely practicable, in an exceptional case of this kind, to fix the date of the beginning of the trial before the jury as to finding the value as the date at which the value of the property should be fixed. While such a date may not do exact justice, it will approximately come nearer doing so in cases of this kind than it will to follow an arbitrary rule by fixing the time as of the filing of the petition in the ordinary condemnation proceeding or the filing of the commissioners' report under the Local Improvement act. I think the trial court should have permitted the appellant to make proof of the enhancement of the value as to the machinery and building materials between the date of the filing of the commissioners' report and the date of the beginning of the trial. Under this reasoning it necessarily follows that the evidence of the value of the additional machinery put in the plant by appellant, if it was shown that it was installed in good faith to keep up the working efficiency of the manufacturing plant, should have been allowed, as well as the evidence to prove the actual damage to this additional machinery by the condemnation of the plant. The owner of the property should not be prevented from improving the same in accordance with the needs of his business, pending hearing on the condemnation proceeding, if he does so in good faith. *Driver* v. *Western Union Railroad Co.* 32 Wis. 569; *Warren* v. *First Division of St. Paul and Pacific Railroad Co.* 21 Minn. 424; Mills on Eminent Domain, (2d ed.) sec. 174.

The opinion in this case states that what constitutes market value is a question of law and not one of fact to be submitted to the jury. This, in my judgment, is not in harmony with the decision of this court in *Chicago and Northwestern Railway Co.* v. *Chicago and Evanston Railroad Co. supra.* I am in accord with the definition of market value as given in the foregoing opinion. In the case last cited one railroad was endeavoring to condemn a strip for right of way across the right of way of the Chicago and Northwestern railway as already located, and the question of market value and how to fix it was one of the chief questions in dispute. The court in that case said (p. 606) : "One of the controverted questions in the case was whether, as a matter of fact, property circumstanced as this was had any market value in that vicinity. We think the evidence tended to prove it had not, whatever the weight of evidence may have been on that question. And as the court had refused all instructions, with the exception above mentioned, presenting this aspect of the case and had undertaken to instruct the jury fully with respect to their duty, it should have told them how the amount of compensation was to be determined if the proofs failed to establish a market value for property situated as that was. This the court did not do." One of the instructions in that case, as shown by the records on file in this court, was to the effect that the jury were to decide, from the evidence, whether or not such land had a market value, and it is manifest from a reading of the opinion in that case that the court reversed the case, not because this instruction was given but because the jury were not fully instructed as to how they should decide upon the value if the proofs failed to establish that the property had a market value. It seems to me that the same conclusion was reached in *Sanitary District* v. *Pittsburg, Ft. Wayne and Chicago Railway Co.* 216 Ill. 575. Whether the question of market value is for the court or jury is referred to in Chamberlayne on Evi-

dence, (vol. 3, sec. 2099*a*,) where it is intimated that it was for the court to decide the question,—citing two cases, one from New York and one from Utah,—while in the Encyclopedia of Evidence (vol. 13, p. 510,) it is stated that the existence of such value is a question of fact,—citing, among other decisions, *Todd* v. *Gamble*, 67 Hun, 38. It is true that there are some questions of fact so clear that the court will have a judgment about them of its own, but such questions in ordinary trials at law, where a finding of preliminary questions of fact by the court is justified, are those that relate to the competency of a witness or the incompetency of a certain class of evidence and are merely incidental to the admissibility of evidence.

The claim of counsel for appellee that the question of market value was a preliminary question, which should be decided by the trial court as a guide to the admission of evidence, does not fit the facts as found in this proceeding. The trial court did not deal with this question as if it were a preliminary one. As I understand the record, a motion for a ruling on this question was presented by counsel for the city, afterward joined in by counsel for the appellant. At the close of appellee's testimony the attention of the court was called to this pending motion and a ruling of the court was asked as to whether the property had a market value or not. The decision of the court was postponed until the conclusion of the petitioner's testimony. No distinct ruling on this motion was made until the end of the trial, although it appears that rulings were made at various times which in effect held that the market value was the test. Under the rulings of this court in *Chicago and Northwestern Railway Co.* v. *Chicago and Evanston Railroad Co. supra,* and in accordance with what I believe to be the proper rule of law, the trial court should have submitted to the jury, as a question of fact, whether or not this property had a market value, to be considered under instructions given setting forth fully the law as applied to the different theories

286 — 28

of counsel, on the facts presented, as to whether or not the property did actually have a market value.

This brings me to the discussion of the question as to whether or not the opinion is right in holding that the evidence proved this property had a market value. The opinion concedes that property, in a few exceptional cases, may have such a special use that market value ought not to be considered decisive; that if it does not have such a value market value cannot be the legal standard to fix for the compensation to be paid for taking the same; but the opinion further holds that on the evidence in this case the property of appellant cannot come within such exception. I do not agree with that conclusion. The great weight of authority in other jurisdictions, it seems to me, is to the contrary, as well as the reasoning of this court in its former decisions. In *St. Louis, Jerseyville and Springfield Railroad Co.* v. *Kirby,* 104 Ill. 345, the court said (p. 349) : "The value of land consists in its fitness for use, present or future, and before it can be taken for public use the owner must have just compensation. If he has adopted a peculiar mode of using that land by which he derives profit and he is to be deprived of that use, justice requires that he be compensated for the loss. That loss is the loss to himself. It is the value which he has and of which he is deprived which must be made good by compensation." In *Chicago and Northwestern Railway Co.* v. *Chicago and Evanston Railroad Co. supra,* the court approved the doctrine laid down in the *Kirby case* just quoted, that the owner had a right to the value which his property had in view of the particular use to which it was adapted, and said (p. 606) : "Indeed, in all cases where a piece of property, by reason of having been applied to a particular use, has a special value to the owner, the rule announced by the court would be improper, and if observed by the jury would necessarily lead to an unjust result. It is claimed by appellant, and it will not be denied that the evidence tends at least to show,

that this particular piece of ground constituted a part of the terminal facilities of appellant's great railway, extending thousands of miles. * * * It is also claimed by appellant, and the evidence tends to prove the fact, that no other property in that vicinity so essential and desirable for the purposes of the company's business can be obtained if that is taken. Now, it is manifest that by reason of the use to which this property is applied and its connection with the company's business generally, it has a special value to the company which it does not have to anyone else, and which the general market value of other property in that locality not thus circumstanced throws but little, if any, light upon, much less furnishes a rule by which to determine its value. Strictly speaking, the market value of anything is determined by what it would sell for in market in due course of business, and this is ascertained by actual sales or offers for like articles. This applies to land as well as anything else. But the term is sometimes used in a more extended sense, as including the estimation which well informed persons would put upon an article in the absence of a market value in the strict sense of that term, and this kind of evidence is always admissible to show value." To illustrate the rule laid down in that case the court further stated hypothetically a case of the owner of a farm who had adapted it to the dairy business by spending several thousands of dollars in preparing necessary stalls and sheds for his cows and in making suitable preparations for the handling of the milk and converting it into butter and cheese, the opinion stating with reference to this illustration that when the farm was thus thoroughly fitted up for this purpose it would have a special value to the owner that it would not have for ordinary farming purposes, and that the owner of the farm, under the circumstances, could not be required to change the use of his farm, and the court would have no right to dictate to him that he should, and require it to be taken in condemnation proceedings at such

a value as would be fixed for it for ordinary farming purposes. In that case, as in this, the property bordered on a branch of the Chicago river, and it was urged there, as it is here, that this location furnished dock facilities for the shipment of freight that it would be very difficult to duplicate in other localities. It was in the light of such facts that the court said in that opinion that the owner of the property was not required to make any pecuniary sacrifice at all (p. 609): "He is entitled to whatever the property is worth to him or anyone else, for any purpose to which it is adapted." In *Ligare* v. *Chicago, Madison and Northern Railroad Co.* 166 Ill. 249, this court said (p. 263): "That if the property had a special value to appellant, from whatever cause, growing out of the best use to which, from its situation, it was adapted, such special value belonged to appellant, and he was entitled to have it considered." See, also, the reasoning of this court in *Johnson* v. *Freeport and Mississippi River Railway Co.* 111 Ill. 413; *Hercules Iron Works* v. *Elgin, Joliet and Eastern Railway Co.* 141 id. 491; *Cahill* v. *Village of Norwood Park,* 149 id. 156; *Sanitary District* v. *Pittsburg, Ft. Wayne and Chicago Railway Co. supra; Bradley Manf. Co.* v. *Traction Co.* 229 Ill. 170; *Chapman* v. *City of Staunton,* 246 id. 394.

I agree with the opinion that the cases cited by counsel for appellant that have to do with the taking over by cities or other public authorities of entire water systems, gas plants or other public utilities, including the entire business of the companies, are not controlling on a question of this kind, and, at the most, can only be persuasive in their reasoning; but there is another class of authorities that have applied a somewhat similar doctrine to manufacturing plants where the business could be continued after condemnation, the same as it can be in this case. *Southern Railway Co.* v. *Michaels,* 126 Tenn. 702, was a proceeding by a railway company to condemn a right of way through a saw-mill property. The strip taken separated the mill

proper from a log harbor. The effect was to impair or destroy the value of the harbor in connection with the operation of the mill. The court held that the value of the property in one alternative was properly to be fixed on the basis of the mill plant, inclusive of the harbor, as a going concern, and that if the log harbor was being used in connection with defendant's mill at the time of the condemnation he would be entitled to be compensated for the cash market value of his mill as a going concern, and the use of the harbor to the mill and mill operations could be estimated as a part of the property taken.

*Yates & Donelson Co.* v. *City of Memphis*, 194 S. W. Rep. (Tenn.) 903, was a proceeding to recover damages from the city and from several railway companies for interference with the Yates & Donelson Company's right of ingress and egress to and from its flouring mill. The court held the closing of access to the property by an established route was the taking of a property right for which compensation should be paid, and that in considering the compensation the company should be considered a going concern.

In *St. Louis, Memphis and Southeastern Railroad Co.* v. *Continental Brick Co.* 198 Mo. 698, there was a proceeding to condemn a right of way through a brick manufacturing plant. The owner's witnesses were men experienced in brick manufacturing but had no actual knowledge of land values in that vicinity, while most of the petitioner's witnesses, if not all of them, were familiar with land values but had no knowledge of brick manufacturing, and it was said in that case, that, as in ordinary business affairs, the opinions of witnesses who had been for the best part of their lives in the same kind of business should have greater weight in estimating the value of the property of a plant equipped for that kind of business than the opinions of men who only knew the general market value of the land upon which the plant was situated but knew nothing of its general value as a site for a brick plant.

*Jeffery* v. *Osborne,* 145 Wis. 351, was a proceeding by a railway company to condemn a strip of land 100 feet wide through Jeffery's automobile manufacturing plant at Kenosha, Wisconsin. On a prior hearing a verdict had been rendered for $125,000, which was reversed on appeal. The second trial resulted in a verdict for $133,000. The strip of land was 100 feet wide and over 1000 feet long, containing 2.3 acres. It took no substantial buildings, but it separated the principal buildings of the factory on the east from the testing factory on the west and took other space upon which a building had already been begun. The court, in discussing the method that should be followed in valuing this strip of land, said (p. 361) : "If the question at issue had been the mere question of the value of land which had no value except for residence or farming purposes, they clearly would not have been qualified witnesses. But this was not the question. There was practically no dispute on the question of the value of the strip as mere land. The plaintiff fixed its value at about $1100 per acre, and no one disputed him. The question was as to the value of the strip as part of the manufacturing plant conducted by the plaintiff, and this was the question upon which these witnesses testified. They showed themselves to be experts in the manufacturing business, and well acquainted, from long years of experience, with the values and needs of plants of this kind. It also appeared that they knew, by examination of the property at or very soon after the time when the land was taken, what its situation, condition and general adaptability to the plaintiff's business was. This knowledge, we think, qualified them to testify as experts on the question of the value of the manufacturing property before and after the strip was taken." In that case the court treated the entire plant as a unit and valued the strip condemned as it affected the value of the plant as a whole. The actual value of the land taken, according to the testimony, would be approximately $2600, but the award was $133,000, and

the court there held that this did not include any element of damage to the remainder but was the value of the property taken as a part of the operating plant, and affirmed the judgment and the award of $133,000 for the land actually taken.  See, also, *Raleigh, Charlotte and Southern Railway Co.* v. *Mecklenburg Manf. Co.* 169 N. C. 156; *Jackson* v. *State,* 213 N. Y. 34; *King* v. *Minneapolis Union Railway Co.* 32 Minn. 224; *State* v. *Williams,* 123 Wis. 61; *Hunter's Admr.* v. *Chesapeake and Ohio Railway Co.* 107 Va. 158.

The real estate witnesses for appellant in this proceeding, in testifying, gave the value of this property as an operating plant consisting of machinery, buildings and land, giving the values of these separate items.  They testified that the property would be worth more than the market value of the different elements of machinery, buildings and land if taken separately; that when a manufacturing plant, operating, has been demonstrated to be a success it would be worth more than the mere value of its physical elements; that a plant which has stood the test of experience and had been found successful would have a "going value," or what the witnesses and counsel for appellant call an "efficiency value."  Two witnesses also testified for appellant who had more or less extended experience in estimating the value of soap manufacturing plants, and they gave the efficiency or going value of this manufacturing plant as worth, independently of its physical parts, from $300,000 to $500,000.  The real estate experts for the city all testified that they had valued the property only with reference to its physical elements.  One of the witnesses conceded, on cross-examination, that he considered it only as if it were not a going concern; that he was estimating it as if there was no business conducted there,—as to the value of the land, buildings and machinery,—the latter two items being considered as junk.  The opinion in this case practically reaches the same conclusion.

The evidence offered here shows that there had been no sales of soap manufacturing plants in Chicago or in the vicinity that in any way assisted in fixing the market value of this property if put on the market as a going concern. If, when a part of a mill site or an automobile plant or a brick-yard is taken, the strict test°of market value should not be applied in finding the value to the owner, I do not see why the same rule should not be applied in taking a portion of a manufacturing plant, such as here in question. If it is proper in such cases to deduce a market value from the intrinsic value of the property and its value to the owner for the special purpose for which it is used,—that is, to prove all the varied elements of value, all the facts which the owner would properly and naturally press upon the attention of a buyer with whom he was negotiating a sale, and all other facts which would naturally influence a person of ordinary prudence desiring to purchase a going concern,—then I think the owner is entitled to have similar evidence considered showing the capabilities of this property as to the business or use to which it has been devoted.

Counsel for appellee argue that as all the evidence on this question offered by appellant was admitted on the trial, therefore appellant has no reason to complain on account of the trial court's rulings in this regard. It is true that the court admitted the evidence on this question offered on behalf of appellant, but the court's rulings during the trial of the case and in the giving of instructions were practically to the effect that the property in question had a market value. These rulings would necessarily lead the jury to believe that the way to reach a verdict as to the fair and just compensation to be given to the owner was to ascertain such market value, and as the court by its rulings held that this property had a market value, the result was that the jury were told, in effect, that the value of the property for the peculiar use to which the owner was putting it in its business, as testified to by the witnesses

for appellant, should not be considered by them in reaching their verdict as to the fair and just compensation to be given for the property. It was because of the misleading character of the rulings of the trial court and the instructions given on somewhat similar questions in *Chicago and Northwestern Railway Co.* v. *Chicago and Evanston Railroad Co. supra,* that the court reversed that case and held that in condemnation cases the owner of the property condemned was not required to make any pecuniary sacrifices at all.

If the rule be adopted as laid down in the foregoing opinion, that market value was a question of law to be decided by the court, then in my judgment the trial court was wrong in holding that under the evidence in this case this property had a market value in accordance with the ordinary use of that term. Furthermore, I can reach no other conclusion than that the valuation fixed by the jury as to the property taken and the damages to the remainder is contrary to the great weight of the testimony in this record.